No. 44,669

J. J. JARNAGIN, *Appellee,* v. VERNER F. DITUS, *Appellant.*

(424 P. 2d 265)

Opinion filed March 4, 1967.

*Morgan Wright,* of Larned, argued the cause, and was on the brief for the appellant.

*Paul B. Watson,* of Jetmore, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal grows out of an action on a promissory note. The case, tried with the aid of an advisory jury, resulted

in a judgment in favor of the plaintiff, J. J. Jarnagin, and against the defendant, Verner F. Ditus, the appellant here.

The principal question involves the statute of limitations and whether or not a credit claimed by the payee extended the running of the statute.

The promissory note, dated October 1, 1957, in the amount of $4,624.22 payable to plaintiff, was executed by three brothers, Verner F. Ditus, W. C. Ditus and Leon Ditus. By its terms the note became due one year after date of execution—October 1, 1958. Upon default, an action was instituted on April 20, 1964, by Jarnagin against the three brothers. The case was subsequently dismissed, without prejudice, by the district court. The present action was filed on April 2, 1965, the pleadings being nearly identical to those in the first action. It should be noted that a motion to dismiss the defendants W. C. and Leon Ditus was sustained by the trial court, and consequently, we are concerned only with the liability of Verner F. Ditus.

To avoid the bar of the five-year statute of limitations [K. S. A. 60-511 (1)], plaintiff's petition alleged:

"On or about the 8th day of October, 1960, the said Verner F. Ditus agreed to renew said note and on said date claimed a credit due on said note in the amount of $649.91, which credit was given by plaintiff and credited to said note as of October 8, 1960."

The defendant, by answer, denied that credit on the note was given by the plaintiff on October 8, 1960, and alleged the action was barred.

The plaintiff presented one witness at the trial—his former attorney, Jack Dalton. The facts will unfold with a resumé of Dalton's testimony. On October 8, 1960, at a meeting held in Dalton's office at Jetmore, Jarnagin, Dalton, Verner F. Ditus and the latter's son discussed the matter of the note to Jarnagin being past due. Dalton stated Jarnagin would like to have it paid, or have some payment made on it. Ditus responded he did not have the money to pay it then, but that Jarnagin owed some money to Ditus Bros. (a trucking business operated by the three brothers) that should either be paid or credited on the note. Dalton asked Ditus how much was owed. Ditus replied he didn't know. Dalton requested Ditus to determine the amount so credit could be given on the note. Later that same day Ditus returned and handed Dalton a slip of paper and said, "This is the amount that we are talking

about." Dalton replied, "All right." The information on the paper was as follows:

```
"1-23    1000.00
Returned bull 9-8-                          300.00
9-8-58                                      649.91
4-8-58—2 cows credit   323.00"
```

On the reverse side of the paper were the figures "649.91" appearing alone. Dalton took the paper, wrote on it "Presented by Verner Ditus 10/8/60," clipped it to the original note, and placed both in his safe.

On November 5, 1962, Dalton wrote the following letter to Ditus:

"Dear Mr. Ditus:

"I advised Mr. Jarnagin that you were in my office in response to my letter requesting some payment on your note to Mr. Jarnagin. I indicated that you were willing to renew the note. We can renew the note for one year. You mentioned that you were entitled to some credit for the trucking and Mr. Jarnagin mentioned that you were able to sell some of these cattle. The new note should be for the principal amount, plus accrued interest, less any credits that you are lawfully entitled to. Will you kindly advise me the credits you feel that you are entitled to and I will discuss them with Mr. Jarnagin and prepare a new note and send it to you for execution."

Dalton further testified the reference in the letter to a conversation with Ditus concerned a conference Dalton had with him "probably within a month prior to November 5, 1962," and did not refer to their conversations on October 8, 1960. The reference to Ditus' being entitled to some credit for trucking referred to the latter conference held just prior to Dalton's letter of November 5, 1962. In a conversation had about the same time, Jarnagin told Dalton he "owed the Dituses for trucking but there weren't any other credits they were entitled to." Not until March 30, 1964, when Dalton wrote a letter to Ditus, did Ditus receive anything "to evidence the granting of any credit on the note." A day or so before filing the first action (April 20, 1964) Dalton wrote on the back of the note the following:

"10/8/60   Credit   Amount   Balance
                    649.91
(per instructions from Verner Ditus)."

Affidavits executed in Alaska by Verner Ditus and his son were presented and admitted by stipulation at trial as defendant's evidence. In addition, defendant introduced the answers given by plaintiff to two sets of interrogatories—one set taken in the first

action; the other set taken in the present case. Verner F. Ditus acknowledged a discussion occurred at the meeting on October 8, 1960, concerning Jarnagin's being indebted to Ditus Bros. for hauling cattle, and that Dalton told him "to figure it up, and that he was sure Mr. Jarnagin would pay it," but nothing further transpired that day with regard to the indebtedness. Ditus confirmed Dalton's testimony concerning the letter of March 30, 1964, as being the first notice Ditus received that a credit had been given on the note on October 8, 1960.

Prior to trial the district court overruled a motion for summary judgment filed by the defendant, Verner F. Ditus.

The issues submitted to the advisory jury were determined as follows:

"1. Was a credit in the amount of $649.91 claimed by the defendant, Verner F. Ditus?

"ANSWER: Yes.

"2. If the answer to Question #1 above is 'Yes,' was such a credit given on October 8, 1960?

"ANSWER: Yes."

Thereafter, the defendant filed a motion to amend, or make additional findings, or in lieu thereof, to grant a new trial. The motion was overruled, W. C. Ditus and Leon Ditus were dismissed from the case, and judgment was entered against Verner F. Ditus in the sum of $7,026.30 plus interest from date of judgment, and costs.

An orderly disposition of the points raised on appeal requires consideration first of defendant's contention that the trial court erroneously overruled his motion for summary judgment because of certain admissions by the plaintiff in his answers to interrogatories. Space does not permit the detailing of defendant's argument on this point. The essence of his contention appears to be that because of inconsistencies between plaintiff's answers to interrogatories taken in the first action and his answers to those posed in the present action, of which some were in the nature of admissions, the motion for summary judgment should have been sustained. We do not agree.

The motion for summary judgment was based solely on the pleadings and plaintiff's answers to the two sets of interrogatories. Attached as part of the pleadings were the note (with the credit notation) and Dalton's letter of November 5, 1962. We have examined them in detail. In all fairness, it would appear from the record that plaintiff was ill at the time he answered the first set of

interrogatories. Several answers indicated he lacked personal knowledge about many events in which his attorney participated after the meeting of October 8, 1960. A considerable portion of defendant's argument is focused upon Dalton's letter to Ditus on November 5, 1962, in which he referred to unascertained credits claimed by Ditus. By his answers to the first set of interrogatories plaintiff appeared to be uncertain of just what credits were referred to in the letter; however, his answers to the second set of interrogatories were more definite and indicated the letter referred to possible credits other than the $649.91 allegedly given on October 8, 1960. Although there were variances in several of the answers, we are unable to conclude that they were clearly inconsistent with each other, or contained admissions which as a matter of law would preclude the plaintiff from offering evidence to support his allegation that a credit of $649.91 was, in fact, given on October 8, 1960.

When ruling on a motion for summary judgment, a court must resolve against the movant any doubt as to the existence of a genuine issue of material fact; the evidentiary material submitted by the party opposing the motion must be taken as true, and such party must be given the benefit of all reasonable inferences that may be drawn from such material. (*Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964; *Herl v. State Bank of Parsons,* 195 Kan. 35, 403 P. 2d 110.)

Measured by these rules, our conclusion is that plaintiff's answers to the interrogatories, when considered together, were such as to show the existence of a genuine issue of fact about whether or not the statute of limitations had been tolled.

The remaining points on appeal relate primarily to the sufficiency of evidence to support the findings of the advisory jury which were adopted by the trial court. In considering the points, we must adhere to our well-established rules of appellate review.

It is the province of the trier of facts to pass on the credibility of witnesses and the weight of their testimony. Our function as an appellate court is confined to the determination of whether or not there is substantial and competent evidence to support the trial court's findings. In making such determination, we must examine the record in the light most favorable to the prevailing party below; and when the findings are based on substantial, competent evidence, they are binding and conclusive on appeal, notwithstanding there may be evidence that would have supported contrary findings.

(*Sullivan v. Sullivan,* 196 Kan. 705, 413 P. 2d 988, and cases cited therein.)

Defendant complains no evidence was presented to support the finding that his offer of credit on October 8, 1960, was limited to only the one item of $649.91. He argues that the paper handed to Dalton contained four items; that these were *all* offered as credits, and, thus, there could be no partial acceptance of the offer. Defendant's argument ignores the fact that on one side of the paper appear the figures "649.91" standing alone. According to Dalton, when the defendant handed the paper to him on October 8, 1960, defendant stated, *"This is the amount* we were talking about." (Emphasis added.) In defendant's affidavit no attempt was made to explain the four items. Thus, there was evidence from which it could be determined the only credit proposed on October 8, 1960, was the one item of $649.91.

Defendant next asserts there was no evidence that the $649.91 credit was granted by plaintiff's attorney on October 8, 1960, and that there was no acceptance thereof until defendant was notified in Dalton's letter of March 30, 1964 (five years and six months after the note's maturity).

Before we consider the point, a review of our law on the subject of part payment and its effect on the statute of limitations is appropriate.

In order to effectively toll the statute, a part payment must have been voluntarily and deliberately made on the indebtedness in question by the debtor, or by someone at his direction, and under such circumstances as to amount to an acknowledgment of the debtor's existing liability on such obligation. The principle upon which part payment extends the running of the statute is that the debtor intended by such payment to acknowledge and admit the greater debt to be due, and from which the trier of facts would be warranted in finding an implied promise to pay. (*Fisher v. Pendleton,* 184 Kan. 322, 336 P. 2d 472, 74 A. L. R. 2d 1274; *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882, 107 A. L. R. 1523; *Elmore v. Fanning,* 85 Kan. 501, 117 Pac. 1019; *Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613; *Good v. Ehrlich,* 67 Kan. 94, 72 Pac. 545.) Part payment need not be in money in order to toll the the statute; it may be by the giving of another note (*Pracht v. McNee,* 40 Kan. 1, 18 Pac. 925), by an endorsement of credit on a note by the payee, if authorized or ratified by the maker (*Wil-*

*loughby v. Sheedy,* 157 Kan. 505, 142 P. 2d 799; *Gorrill v. Goff,* 148 Kan. 765, 84 P. 2d 953, 124 A. L. R. 223), or by an agreement to apply, as a credit, a debt owing by the creditor to the debtor (54 C. J. S., Limitations of Actions § 329).

With the foregoing rules in mind, we believe the fallacy of defendant's contention is apparent. In our view, the evidence previously set out concerning the events occurring between Dalton and Ditus on October 8, 1960, was sufficient to show that an agreement culminated on that date whereby Jarnagin's indebtedness to Ditus in the amount of $649.91 was to constitute a credit on the note. Dalton's clipping of the paper to the promissory note was consistent with the agreement. Thus, we believe Ditus acknowledged his liabiltiy on the existing note, and his promise to pay the balance due could be implied therefrom.

The fact the credit was not endorsed on the note by Dalton until shortly before an action was instituted is of little significance. It is the date of payment, not the date of the endorsement thereof, that operates to toll the statute. Long ago in *Hastie v. Burrage,* 69 Kan. 560, 77 Pac. 268, there was evidence a payment was not actually endorsed upon the note until after the expiration of the time that the statute of limitations would have run. It was claimed that such endorsement was necessary to toll the statute, and that mere payment alone was not sufficient. The court, in rejecting the contention, said:

". . . It is the payment of a part of the principal or interest, and not the indorsement of such payment upon the account or evidence of debt, which tolls the statute. . . ." (p. 563.)

Conversely, in the case of *In re Estate of Badger,* 156 Kan. 734, 137 P. 2d 198, it was urged that an endorsement of credit on the back of a note before the statute of limitations had run was evidence of partial payment which would toll the statute. The court held that the notation of payment, standing alone, was no evidence that payment was actually made, and it was noted:

"The fact that must be proven in order to toll the statute is that payment was made on the note by the maker before the statute had run. . . ." (p. 743.)

(Also, see Anno. 23 A. L. R. 2d 1331.)

Likewise, the *Badger* decision repels any notion of there being a presumption of payment on the date of endorsement, as urged by defendant for the first time in his motion before the lower court to amend its findings.

Defendant's final complaint pertains to an allegation in plaintiff's petition in the first action that a credit in the amount of $649.91 "was *subsequently* given by plaintiff and credited to said note as of October 8, 1960." (*Emphasis* added.) His argument is twofold, as nearly as we can ascertain, and centers on the use of the word "subsequently" as being an admission which was binding on the plaintiff, and (1) when considered with plaintiff's answers to interrogatories, required that the defendant's motion for summary judgment be sustained, and (2) precluded proof by the plaintiff that the credit was, in fact, given on October 8, 1960. The contention lacks merit, for in either instance defendant ascribes a restrictive connotation to the word that is violative of its ordinary meaning.

The word "subsequent" is defined in Webster's Third New International Dictionary as: "following in time; coming or being later than something else."

The use of the word, in our opinion, neither precluded proof of the events relied on by plaintiff as transpiring later on the same day (October 8, 1960), nor did it constitute an admission that compelled a ruling contrary to that made by the district court on the motion for summary judgment.

After a careful examination of the entire record, we believe this was essentially a fact case resolved adversely to the defendant. There being no showing that the lower court erred in any of the matters about which complaint is made, the judgment is affirmed.