No. 45,489

Robert H. Lawrence, *Appellant*, v. Richard S. Deemy, *Appellee.*

(461 P. 2d 770)

Opinion filed December 6, 1969.

*Jerry K. Levy*, of Wichita, argued the cause and was on the brief for the appellant.

*Howard W. Harper*, of Junction City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: This is an action for personal injuries arising out of an automobile collision that occurred December 7, 1965, approximately three miles south of Herington on U. S. Highway 77. The defendant filed a motion for summary judgment, claiming the undisputed facts established he acted in a sudden emergency and, therefore, was not negligent as a matter of law. The district court sustained the motion, and plaintiff has duly perfected his appeal.

Plaintiff urges the trial court erred in granting summary judgment because (1) pretrial discovery had not been completed, and (2)

there were genuine issues of material facts which remained unresolved.

The events concerning the accident are gathered from the pleadings and depositions which were before the trial court when it made its ruling.

About 3 p. m. on the day in question the plaintiff, Robert H. Lawrence, was northbound on U. S. 77, driving his 1965 Cadillac from Wichita to Junction City, his place of residence. At the same time the defendant, Richard Deemy, an eighteen-year-old youth, was southbound on the same highway, driving his 1954 Ford from his home in Wilsey to Wichita, where he attended school. Richard's mother was a passenger in the front seat with him. Lawrence was traveling at a speed of about forty miles per hour; Richard at approximately sixty. The two vehicles approached an area on the highway described as "sort of a valley between two hills." As Lawrence "topped" the hill he saw a man afoot in the southbound (Richard's) lane of traffic. The man was picking up items later determined to have blown from the top of an automobile belonging to a Lt. Kruse, who with his family had passed southward through the area shortly before. Lawrence saw the on-coming Deemy car, and recognizing the danger the man was in, slowed his vehicle and started honking his horn to get the man's attention, but the man continued to pick up the items and ignored Lawrence.

When Richard's automobile came up over "the rise in the road" from the north, Mrs. Deemy also saw the man in the middle of the road, walking from the east to the west side of the highway, and shouted to her son to miss him. Richard applied his brakes, swerved to the left across the center line and into the northbound traffic lane in order to go between the man and a station wagon parked on the east side of the highway. Richard missed the man and the station wagon but sideswiped the Lawrence vehicle in the northbound lane of traffic.

Meanwhile, upon noticing his belongings had blown off the top of his car, Lt. Kruse returned to the location where the accident occurred. He saw the Lawrence and Deemy cars and the man standing in the southbound lane picking up something from the road which he put in the back of the parked station wagon. The man got into the station wagon and left prior to the arrival of a state highway patrolman. With the help of Lt. Kruse, who had had experience in accident investigation as a military policeman, the

state patrolman proceeded to make an investigation and subsequently prepared a diagram of the accident scene. The diagram revealed that the Deemy vehicle left 179 feet of skid marks.

When this action was commenced in June 1966, defendant was served with summons at the home of his parents, where he was visiting while on leave from the military service. Subsequently he was sent to Vietnam. Upon defendant's application a stay order of further proceedings was granted pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U. S. C. A., App. § 501, *et seq.*); however, the order provided that either plaintiff or defendant could take such depositions as they desired, pending the dissolution of the stay order. Thereafter, despositions were taken of the plaintiff, defendant's mother, and Lt. Kruse and his wife.

Although defendant had neither answered nor been deposed, his attorney filed a motion for summary judgment on January 3, 1968. When the motion was argued plaintiff vigorously objected to the hearing of the motion because he had been unable to take the deposition of the defendant. The court, nevertheless, proceeded with the hearing, took the matter under advisement, and on April 1, 1969, sustained defendant's motion for summary judgment.

Before we consider the merits of the appeal a brief review of our law relating to summary judgments is in order.

Generally before a summary may be granted, the record before the court must show conclusively that there remains no genuine issue as to a material fact, and that the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonable, that a party cannot prevail upon a trial will not warrant a summary judgment if there remains a dispute as to a material fact which is not clearly shown to be sham, frivolous, or so unsubstantial that it would be futile to try the case. (*Knowles v. Klase,* 204 Kan. 156, 460 P. 2d 444, *Green v. Kaesler-Allen Lumber Co.,* 197 Kan. 788, 420 P. 2d 1019.) The manifest purpose of a summary judgment is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues do exist. If there is a reasonable doubt as to their existence, a motion for summary judgment will not lie. (*Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976.) A court, in making its determination, must give to the party against whom sum-

mary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration. (*Shehi v. Southwest Rentals, Inc.,* 199 Kan. 265, 428 P. 2d 838; *Jarnagin v. Ditus,* 198 Kan. 413, 424 P. 2d 265; *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964.)

Regardless of how refined or sophisticated we attempt to state the summary judgment rule, we always return to the language of the statute itself (K. S. A. 60-256 [*c*])—there must remain "no genuine issue as to any material fact." A natural result of this requirement is that in negligence cases summary judgment is seldom proper. (*Knowles v. Klase,* supra; *Secrist v. Turley,* supra.)

A short answer to disposition of this case could be that under the circumstances defendant's motion for summary judgment was improvidently granted because plaintiff had been unable to take defendant's deposition. While the stage of the proceedings does not necessarily determine the propriety of summary judgment being rendered (*Goforth v. Franklin Life Ins. Co.,* 202 Kan. 413, 449 P. 2d 477), ordinarily it should not be granted when pretrial discovery remains incomplete (*Brick v. City of Wichita,* supra). Our decision in *Timmermeyer v. Brack,* 196 Kan. 481, 412 P. 2d 984, dealt with a somewhat analogous situation to the one here. There, in a tort action, the court at pretrial conference had before it only the plaintiff's deposition. The deposition of the defendant had been taken but not transcribed. In holding summary judgment was improper, we stated:

"Summary judgment should not be entered if there remains a genuine issue of a material fact, nor *where the opposing party is proceeding with due diligence with his pretrial discovery but has not had an opportunity to complete it."* (Syl. ¶ 1.) (Emphasis added.)

In the instant case, after considering the record before the trial court at the time the motion for summary judgment was granted, we are further convinced there were genuine issues of material facts pertaining to the question of defendant's negligence. Throughout the case defendant relied on the doctrine of sudden emergency, contending that under the undisputed facts he was faced with an emergency and, therefore, must be absolved of negligence as a matter of law. We believe defendant misconceived the theory and concept of the doctrine as it has evolved in our jurisprudence.

The doctrine of sudden emergency as related to the law of negligence was well stated in *Trinity Universal Ins. Co. v. Farmers*

*Co-operative Exchange of Morland,* 171 Kan. 501, 504, 233 P. 2d 468, quoting from 1 Blashfield Cyclopedia of Automobile Law and Practice, § 668:

" 'When one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection, and, in the event that an automobilist suddenly meets with an emergency which naturally would overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, and as a result injures a third person, he is not negligent, provided he has used due care to avoid meeting such an emergency and, after it arises, he exercises such care as a reasonably prudent and capable driver would use under the unusual circumstances, which is usually for the jury.' "

(Also, see, *Jobst v. Butler Well Servicing, Inc.,* 190 Kan. 86, 372 P. 2d 55.)

The doctrine of sudden emergency cannot be regarded as something apart from and unrelated to the fundamental rule that everyone is under a duty to exercise ordinary care under the circumstances to avoid injury to others. A claim of emergency is but a denial of negligence. Application of the doctrine is really application of the test for negligence couched in language tailored to a peculiar situation. The fact that a person is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is merely a factor in determining the reasonable character of his choice of action and whether his conduct constituted negligence. (Restatement of Torts § 296.) Thus, if one confronted with a sudden emergency conducts himself as a reasonably careful person would when confronted by a like emergency, he is not liable for the injury. The arising of the emergency does not relieve one from the obligation of exercising ordinary care. By the same token, a person cannot invoke the emergency rule if he brought the emergency upon himself by his own fault or did not use ordinary care to avoid it.

Inherent in the trial court's ruling in the instant case is a determination that as a matter of law defendant was confronted with an emergency not of his own making, and after the emergency arose his conduct was such as not to have constituted negligence. From the record before the trial court we are of the opinion that these matters were questions of fact which were for the jury to decide. In other words, the evidence presented factual issues upon which reasonable minds might differ as to whether defendant was

negligent either before or after being confronted with any emergency.

There was testimony defendant was familiar with this particular portion of the highway and had traveled it dozens of times; that this was the only bad place in the road for some distance; and that the area was marked with caution signs and a no-passing zone. The evidence disclosed defendant's vehicle was traveling at approximately sixty miles per hour and left skid marks of 179 feet. Lt. Kruse testified a driver going south on the highway would have to be "almost to the top or apex of the hill before he could see down the southern slope of the hill," and that the pedestrian in the roadway was about 200 to 250 feet south of the apex of the hill. Other testimony indicates that defendant's mother may have seen the man before the defendant saw him. The issues of whether defendant was maintaining a proper lookout and whether he was traveling at a reasonably safe speed under all the circumstances bore directly on the question of whether defendant brought any emergency upon himself by his own tortious actions.

Further, we find testimony from Lt. Kruse that defendant could have driven his vehicle to the right of the man in the highway instead of taking the course which resulted in his colliding with plaintiff's automobile. Hence, even if defendant used due care to avoid any emergency, an issue was raised as to whether or not he exercised the care of a reasonably careful person, when confronted by a like emergency, in selecting the alternative courses of action available to him at the time.

In holding there were unresolved issues of material facts, we in no way suggest what the ultimate outcome of this case may be. What we hold is that when plaintiff is given the benefit of all inferences which may reasonably be drawn from the evidentiary material before the trial court, the defendant's motion for summary judgment was erroneously sustained.

The judgment is reversed with directions to overrule the motion for summary judgment.