## No. 47,610

ROBERT L. KERN and JUDY E. KERN, d. b. a. THE NON-ESTABLISH-MENT, *Appellants*, v. VERN MILLER; GARY PORTER; JOHN DOE, a/k/a MARCUS PRESTON; and JOE DOE, a/k/a JACK COLLIER, *Appellees*.

(533 P. 2d 1244)

Opinion filed April 5, 1975.

*Charles F. Forsyth*, of Erie, argued the cause, and *Clark M. Fleming*, also of Erie, was with him on the brief for the appellants.

*Michael Cavell*, assistant attorney general, argued the cause, and *Curt T. Schneider*, attorney general, and *John T. Moore*, assistant attorney general, were on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is an action for breach of contract brought by Robert L. and Judy E. Kern against Vern Miller, Gary Porter, Mar-

cus Preston, and Jack Collier. Plaintiffs sought damages for the loss of business reputation and good will, and the wrongful conversion of business assets and income. The trial court granted defendants' motion for summary judgment and dismissed the case on the ground the four individual defendants were immune from suit under K. S. A. 46-901, 46-902, 46-903, and 75-3111.

Since we are concerned with a motion for summary judgment, this court on review can only assess the propriety of the trial court's action based upon the pleadings of the parties and matters established by affidavits, depositions, answers to interrogatories and requests for admissions. (K. S. A. 60-256 [c].) Here, we have the pleadings only. The petition reads:

"Come now the plaintiffs and for their cause of action against the defendants, allege:

"1. That prior to October 23, 1973, plaintiffs owned and operated The Non-Establishment, a tavern in Parsons, Kansas; that they had been having trouble and had sought help from law enforcement officials; that they thereafter were contacted by persons calling themselves Marcus Preston and Jack Collier who later identified themselves as agents for the Kansas Bureau of Investigation, working for Vern Miller, Attorney General of the State of Kansas; that plaintiff, Robert L. Kern, required identification and assurance of their identity and was given this by Gary Porter, also an agent working for Vern Miller.

"2. That said so-called agents, acting on behalf of Vern Miller, and all four defendants acting outside the scope of the duties of the Attorney General of the State of Kansas, made arrangements to take over and operate The Non-Establishment and agreed as consideration therefor to provide the usual profit on the business and not damage the value of the business.

"3. That to maintain the appearance of a legal transaction, the defendants procured a so-called 'option' to buy the business which later plaintiffs were required to pay for; that the two persons who were acting as employees and agents of Vern Miller took over and operated the tavern in an inefficient manner as a drug rendezvous, giving away part of the assets of the business and taking money from the business for personal use and selling and buying drugs and committing illegal acts in the operation of said business, thereby damaging the trade and reputation of the premises; that the defendants operated the business until November 16, 1973, when they had the authorities close the business at their request; that plaintiffs are preparing to reopen the business, but the reputation and good will of the business, the actual furniture, fixtures and supplies and the loss of income over the period it was operated by the defendants has cost or damaged the plaintiffs in the amount of $8,890.00, which plaintiffs hereby demand."

The answer reads:

"1. Except as is hereinafter admitted, explained or specified in part, defendants specifically deny each and every allegation set forth in the petition filed by plaintiffs.

"2. That defendants are without knowledge of information sufficient to form a belief as to the truth of plaintiffs' averment that prior to October 23, 1973, plaintiffs owned and operated The Non-Establishment, a tavern in Parsons, Kansas as set out in paragraph numbered one of plaintiffs' petition, defendants specifically admit the averment contained in paragraph one that plantiffs had been 'having trouble and had sought help from law enforcement officials.' Defendants specifically deny the remainder of paragraph numbered one wherein plaintiffs allege 'that they thereafter were contacted by persons calling themselves Marcus Preston and Jack Collier who later identified themselves as agents for the Kansas Bureau of Investigation, working for Vern Miller, Attorney General of the State of Kansas; that plaintiff, Robert L. Kern, required identification and assurance of their identity and was given this by Gary Porter, also an agent working for Vern Miller.' Defendants explain that defendant Jack Collier did in fact contact plaintiff Robert L. Kern and identified himself as a Special Investigator for the Attorney General of the State of Kansas. Defendants also explain that defendant Gary Porter was contacted by plaintiff Robert Kern and was given assurance that defendant Jack Collier was in fact a Special Investigator employed by the office of the Attorney General.

"3. That defendants specifically deny each and every allegation contained in paragraph numbered two of plaintiffs' petition and explain as follows: That defendant, Vern Miller, is the duly elected Attorney General of the State of Kansas and has held said office since January 11, 1971, and in the performance of his official duty as the elected chief law enforcement officer of the State of Kansas has employed Special Agent defendant Gary Porter and Special Investigators Marcus Preston and Jack Collier, to aid and assist in the control of illegal drug use within the State of Kansas; that, defendant, Special Investigator Jack Collier, did make arrangements with plaintiff Robert Kern whereby defendant Investigator Collier and defendent Investigator Preston would work as undercover investigators to investigate the illegal drug activity at the tavern known as 'The Non-Establishment' that was at that time and at all times thereafter operated by plaintiffs. Plaintiffs maintained custody of all aspects of the business operation.

"4. That defendants specifically deny each and every allegation contained in paragraph numbered three of plaintiffs' petition.

"5. Defendant, Vern Miller, is the duly elected Attorney General of the State of Kansas having held that office since January 11, 1971, defendant Gary Porter is and has been a duly appointed Special Agent of the office of the Attorney General since January 15, 1971; that defendant Marcus Preston is and has been a duly appointed Special Investigator of the office of the Attorney General since December 1, 1972; that defendant Jack Collier is and has been a duly appointed Special Investigator of the office of the Attorney General since September 25, 1973. That pursuant to K. S. A. 1972 Supp. 46-901 et seq., state officials and their agents are 'immune from liability and suit on an implied contract or for negligence or any other tort. . . .'

"6. Defendants Marcus Preston and Jack Collier at all times while working at 'The Non-Establishment' conducted themselves in an efficient and prudent manner and in fact increased the business and profits of the business by their labor; and that if the reputation of the business was damaged, the cause was plaintiffs' inefficient business practices. Defendents further assert that at all

times pertaining to this suit plaintiff was fully advised of the true nature of defendants' objective as undercover agents."

Prior to the trial of the issues, defendants filed a motion to dismiss plaintiffs' cause of action for failure to state a claim for which relief could be granted, and requested the motion be treated as one for summary judgment pursuant to K. S. A. 60-256. In support of their motion defendants argued they were officers and agents of the State of Kansas during the period of the alleged injury to plaintiffs and that K. S. A. 46-901, *et seq.*, provides immunity to defendants. The trial court sustained defendants' motion based upon a finding of immunity.

Summary judgment is authorized in K. S. A. 60-256. We have repeatedly stated that in accord with subsection ( *c* ) thereof, before a motion for summary judgment may be granted the record before the court must show conclusively that there remains no genuine issue as to material fact, and that a moving party is entitled to judgment as a matter of law. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues exist. In making its determination, the court must give to the party against whom summary judgment is sought the benefit of all the inferences that might reasonably be drawn from the facts under consideration. ( *Lawrence v. Deemy,* 204 Kan. 299, 461 P. 2d 770; *Albright v. McElroy,* 207 Kan. 233, 484 P. 2d 1010.)

If we should determine a material issue existed, based on the pleadings, we must remand the case for a trial where further evidence may be presented and the facts properly determined.

The trial court granted summary judgment in reliance upon K. S. A. 46-901. That section is entitled "Governmental immunity of state; implied contract, negligence or other tort; notice in state contracts," and provides as follows:

"( *a* ) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, except as is otherwise specifically provided by statute:

"( 1 ) The state of Kansas; and

"( 2 ) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; and

"( 3 ) all committees, assemblies, groups, by whatever designation, authorized by constitution or statute to act on behalf of or for the state of Kansas.

"( *b* ) The immunities established by this section shall apply to all the members of the classes described, whether the same are in existence on the effective date of this act or become members of any such class after the effective date of this act.

"(c) The state of Kansas and all boards, commissions, departments, agencies, bureaus and institutions and all committees, assemblies and groups declared to be immune from liability and suit under the provisions of subsection (a) of this section shall, in all express contracts, written or oral, with members of the public, give notice of such immunity from liability and suit."

Defendants claim immunity under subsection (b). They argue the attorney general, as a constitutional officer and part of the executive branch of the Kansas government, is a "member" of the class "state of Kansas" set forth in 46-901 (a) (1), and that his agents are similarly members of that class. The trial court agreed.

In our judgment, the immunity granted by 46-901 (a) is limited to claims against the State of Kansas and its boards, commissions, departments, agencies, bureaus and institutions; and all committees, assemblies and groups authorized to act on behalf of the state. Subsection (b) of the statute refers to "members of the classes described." We interpret these words to mean the various boards, commissions, etc., which make up the classes described in subsection (a), and not the individuals composing the several classes. This interpretation is consistent with the title of the act which refers to "Claims Against the State" (Article 9). Subsection (b) was included in 46-901 to extend the application of the immunity to all classes described in subsection (a), whether or not the individual board, commission, etc., was in existence on the effective date of the act.

Since we have determined defendants have no individual statutory immunity we turn to our case law on this subject. As a general rule it has been stated that public officers, when performing the duties imposed upon them by statute and exercising in good faith the judgment and discretion necessary therefor, are not liable personally in damages for injuries to private individuals resulting as a consequence of their official acts. (*Gresty v. Darby,* 146 Kan. 63, 68 P. 2d 649; *Tillotson v. Fair,* 160 Kan. 81, 159 P. 2d 471.) As plaintiffs point out, however, this general rule of immunity is limited to acts performed within their jurisdiction. If public officers act outside the scope of their authority they may be held liable for damages resulting from their acts. (*Cunningham v. Blythe,* 155 Kan. 689, 127 P. 2d 489; *Tillotson v. Fair,* supra.)

Plaintiffs' petition specifically alleges all four defendants were "acting outside the scope of the duties" of the attorney general when they entered into the contract to take over the plaintiffs' business. The determination of the issue of scope of authority

should follow the fact-finding procedures in the trial court. Any effort to determine the issue as a matter of law at this stage in the proceedings would require improper speculation. We believe the orderly process of trial and the ultimate determination of facts should precede a decision on this issue.

Reversed and remanded.

FATZER, C. J., and PRAGER, J., concur in the result, but dissent from Syllabus ¶ 2 and the corresponding portions of the opinion.

FROMME, J., not participating.