No. 48,495

In The Matter of The Estate of Howard Lee Powell, Deceased, VINITA POWELL and VINITA POWELL, Administratrix of the Estate of Howard Lee Powell, Deceased, *Appellants,* v. EDITH DEL-LINGER, *Appellee.*

(567 P.2d 872)

Opinion filed July 11, 1977.

*Jack Shelton,* of Lenexa, argued the cause and was on the brief for the appellants.

*David Mullies,* of Hudson, Hudson & Mullies, of Fort Scott, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an action to recover funds taken from a bank account and to determine ownership of a mobile home. The plaintiff, Vinita Powell, initiated the action on her own behalf as widow of the decedent, Howard Lee Powell, and as administratrix of his estate.

Vinita and Howard were married on November 26, 1959. The couple settled on a farm owned by Howard's mother near Blue Mound, Kansas. Howard tilled the soil and traded cattle. Vinita was a housewife and did farm chores.

The marriage was not without its problems. Howard and Vinita lived in an old ramshackle farm house which was still heated by a coal stove. The living conditions caused Vinita to leave Howard on several occasions. Each time Vinita left, Howard would ask her to return, promising they would move to a better farm house or he would build a new one. Vinita would return, but Howard would never carry out his promises. This marital discord led Vinita to file for divorce on May 2, 1973. The parties prepared a separation agreement, but the divorce case was dismissed on April 1, 1974, for lack of prosecution.

During the spring of 1974, Howard became very ill. On May 14 he was taken to the K.U. Medical Center where it was determined he had terminal cancer. Howard was released from the medical center on May 30. Following his release he went directly to Iola to the home of his sister, Edith Dellinger, because his doctor stated that he needed to live in town close to a doctor. On June 1, Howard entered the Allen County Hospital. He died there on June 15, 1974.

One of Howard's assets was a checking account which had been opened when he was a small boy at the Farmers State Bank of Blue Mound. It was the only account he had in his lifetime and was used for all his business transactions. Vinita did not write checks on the account because she did not know Howard had the account until shortly before his death. She had no checking account of her own.

Approximately two months before Howard died he went to the Blue Mound bank and told the cashier he wanted to put his sister's name on his account. The cashier prepared a checking account signature card in the names of "Howard Powell or Edith Dellinger" and put an "x" in the box indicating the account to be a joint account. Howard did not read the card in the presence of the cashier but did sign it on the front. The cashier told Howard to take the card to his sister, have her sign it, and bring it back. Howard had Edith sign the card on the front below his signature. Howard returned the card to the bank. Neither Howard nor Edith signed the card on the back where the terms of the joint account contract were set forth.

Edith did not make any deposits into the account and did not write any checks on the account until shortly before Howard's death. On June 3, 1974, Edith became certain Howard was going to die. She went to the bank and, using a blank check supplied by the bank, wrote a check withdrawing the entire balance, $25,616.61. The money was deposited to an account she opened at the Allen County State Bank in her name only. She did not tell Howard she had closed the account.

Howard also owned a 1972 Sundance mobile home. It was purchased new in May, 1972, by Howard. The title was issued jointly with right of survivorship to Howard and his mother, Pearl Powell. The mobile home was set on the farm close to the old farm house and was used as a residence for Pearl.

Pearl died on May 13, 1974, the day before Howard entered the K.U. Medical Center. During the time Howard was in that hospital he was visited by Edith and her husband, Sam. While there Sam asked Howard what was to be done with the mobile home. Howard stated, "I want to sign it over to Edith." Thereupon, Howard signed the title and gave it to Sam. Because a notary public was not present the Dellingers took the title back to Iola where they had it notarized by a legal secretary. The title was sent to Topeka and a new title was issued showing Edith Dellinger to be the sole owner of the mobile home.

Since the bank account and mobile home were the primary assets of Howard Powell, Vinita filed action to recover them and bring them into the estate. The cases were consolidated for trial and all evidence presented to the trial court was in the form of documents and depositions. For that reason this court is in the position to make its own factual determination of the issues. (*In re Estate of Broadie,* 208 Kan. 621, 624, 493 P.2d 289.)

The primary issue is whether the bank account was one of joint tenancy with right of survivorship. The basis for determining the ownership of such an account is succinctly explained in *In re Estate of Johnson,* 202 Kan. 684, 452 P.2d 286. The court said:

"Whether or not a joint tenancy bank account is created in the name of a depositor and another must be determined on contract principles. (*In re Estate of Smith,* 199 Kan. 89, 427 P.2d 443.) If the depositor executes an account signature card which contains as part of its provisions an agreement in clear and unambiguous language that a joint tenancy account with the right of survivorship was intended, then such an account is created and the agreement is enforceable

according to its terms. In such case, the signature card constitutes a contract in writing between the depositor and the bank, and parol evidence of an understanding at variance with its terms cannot be considered. (*In re Estate of Smith,* supra; *Simonich, Executrix v. Wilt* [197 Kan. 417, 417 P.2d 139].) When, however, the language of the written instrument signed by the depositor is uncertain or ambiguous, parol evidence relating to the facts and circumstances existing prior to and contemporaneously with the execution of the instrument is admissible in order to clarify the intention of the depositor at the time of the creation of the account. We have held that when a two-party account is opened without the use of a signature card or an instrument in writing signed by the depositor, a valid joint tenancy account between the depositor and bank may nevertheless be proved by parol evidence if the terms of the agreement clearly disclose that a joint tenancy was intended to be established. The all-important thing is the clarity with which the intent of the depositor is expressed at the time the transaction is initiated. (*Edwards v. Ledford,* 201 Kan. 518, 441 P.2d 834, and authorities therein cited.)" (pp. 696-97.)

After pointing out that the depositor failed to sign the reverse side of the signature card containing the depositor's contract, the court ruled there was not a signed written contract containing express language creating a joint tenancy account; therefore, parol evidence was admissible. (See also, *In re Estate of Matthews,* 208 Kan. 492, 493 P.2d 555.)

Edith testified that years ago Howard told her he wanted her to have the money in the bank account; therefore, she was not surprised when Howard gave her a signature card to the Blue Mound bank account and told her to sign it. When he asked her to sign the card he told her he wanted her to have the money. Sam, Edith's husband, testified that Howard once told him that he (Howard) might give the checking account to Edith. At the time the signature card was signed by Edith, Sam remembered Howard's stating he wanted Edith to have the account.

While we do not consider this sufficient to establish joint tenancy, it has significance when considered with the testimony of the bank cashier, Walter Bayless. When Howard went to the bank on April 25, 1974, he told Bayless he wanted his sister's name put on the account with him. Bayless prepared the signature card and gave it to Howard, who signed it. Howard was told to get Edith to sign it. Bayless testified that although he didn't remember the exact conversation, he understood Howard wanted Edith to have the account upon Howard's death and Howard knew the account was to be a joint tenancy with the right of survivorship. Bayless also testified that the fact this account was to be a joint account with right of survivorship was discussed

with Howard. Prior to his mother's death, Howard had added her name to the account. Bayless stated that at the time the signature card with the mother was signed Howard stated he wanted his mother to have the account if he died.

Together with the signature card, we deem the testimony of the three witnesses sufficient to establish a joint tenancy with the right of survivorship. (*In re Estate of Wood,* 218 Kan. 630, 545 P.2d 307; *Winsor v. Powell,* 209 Kan. 292, 497 P.2d 292; *In re Estate of Matthews,* supra; *Edwards v. Ledford,* 201 Kan. 518, 441 P.2d 834; *Simonich, Executrix v. Wilt,* 197 Kan. 417, 417 P.2d 139.) Edith had the right to write checks upon the account during Howard's lifetime as well as after his death. (See, *Waters v. Nevis,* 31 Cal. App. 511, 160 Pac. 1081 [1916]; *Mathey v. Central National Bank of Junction City,* 179 Kan. 291, 293 P.2d 1012.)

It cannot be questioned that decedent had the right to dispose of his bank account in this manner. It is well recognized that a person may dispose of his personal property during his lifetime, even to the exclusion of a spouse. (*Winsor v. Powell,* supra; *Ackers v. First National Bank of Topeka,* 192 Kan. 319, 387 P.2d 840; *Small v. Small,* 56 Kan. 1, 42 Pac. 323.)

Howard made a valid gift of the mobile home. By signing the title over to Edith, he did all that was necessary on his part to make a gift. By accepting the transfer and obtaining a new title, Edith accepted the gift. (*In re Estate of Matthews,* supra at 505; *Hudson, Administrator v. Tucker,* 188 Kan. 202, 361 P.2d 878; *In re Estate of Baumstimler,* 159 Kan. 316, 153 P.2d 927.)

Although K.S.A. 8-135 was violated when Howard signed the title without the presence of a notary, no one has contended the signature on the title transfer was not Howard's signature. He intended to give Edith the mobile home and his failure to comply with K.S.A. 8-135 does not invalidate the transfer. (*In re Estate of Baumstimler,* supra.)

The judgment of the trial court is affirmed.