No. 49,410

FARMERS INSURANCE COMPANY, INC., *Appellee,* v. JOHN R. SCHILLER, *Appellant,* and ROBERT V. MOORE; J. F. HAILE, Center Director of Veterans Administration Hospital, Bay Pines, Florida, *Defendants.*

(597 P.2d 238)

Opinion filed July 14, 1979.

*Harold S. Youngentob,* of Goodell, Cogswell, Stratton, Edmonds, Palmer & Wright, of Topeka, argued the cause and was on the brief for the appellant.

*J. H. Eschmann,* of Ascough, Bausch & Eschmann, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The case comes to this court on a Petition for Review from the Court of Appeals. The Court of Appeals reversed a summary judgment entered by the district court in favor of the plaintiff Farmers Insurance Company and remanded the case for further proceedings. See *Farmers Ins. Co. v. Schiller,* 3 Kan. App. 2d 87, 589 P.2d 641 (1979). We reverse the decision of the Court of Appeals and affirm the summary judgment entered by the district court in favor of plaintiff.

This action was filed by the insurance company for a declaratory judgment to determine possible liability exposure under the permissive user provision of the omnibus clause in an automobile insurance policy issued to Robert L. Hester. The policy provided coverage for personal injuries with respect to Hester's truck to the named insured or a relative and to "any other person while using such automobile and any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named insured or with his permission."

The insurance company by petition in the declaratory judgment action alleged it had issued a policy of automobile liability insurance insuring Robert Hester and covering his 1959 Ford truck; that Hester sold the truck on August 31, 1974, to David Bayless and delivered the certificate of title to him; and by reason of said completed sale it was no longer responsible for claims arising thereafter out of the operation and use of the truck by Bayless or others. The company alleged that its assured, Hester, at no time thereafter permitted John R. Schiller or Robert V. Moore to use or drive the truck. The company further alleged that Schiller had made claim against the company for personal injury protection benefits, that no coverage was provided under the Hester policy to Schiller, and that the court should determine that no liability exists as to Schiller as a result of the accident which was alleged to have occurred on September 4, 1974, wherein either Schiller or Moore was allegedly driving said vehicle.

Schiller answered alleging no knowledge of the whereabouts of Moore, admitting the existence of the policy of insurance, admitting that the ownership of the truck was in Hester, and alleging that the policy was in effect and that coverage existed for Schiller on September 4, 1974. This answer was filed April 15, 1976.

On November 9, 1976, plaintiff filed a motion for summary judgment alleging no genuine issue as to any material fact as shown by an affidavit and memorandum attached to the motion.

The affidavit was by Hester and stated that he sold the 1959 Ford pickup truck to Dave Bayless on August 30, 1974, for $150.00. Bayless paid $100.00 down and agreed to pay the balance the following week. Hester signed the certificate of title transferring ownership but since it was after 9:00 p.m. no notary public was immediately available. Bayless then advised Hester that he would get the title notarized and bring the title back in the

morning. Bayless wanted to drive the pickup home since he had no other transportation. Hester allowed his license tag to remain on the vehicle and permitted Bayless to drive the vehicle home but with the understanding and promise from Bayless that he would return the pickup and title the next morning. Hester stated in his affidavit that he did not authorize Bayless to drive the pickup except to his house and back. He further stated under oath that he did not authorize Bayless to permit any other person to drive the pickup.

In this affidavit filed in support of the motion for summary judgment Hester further stated that Bayless failed to return on the following morning, that plaintiff attempted and was unable to locate Bayless or the pickup on September 2 and 3, that Bayless came to Hester's house on September 5, 1974, and advised Hester the vehicle had been involved in an accident. Bayless advised Hester that Bayless was not driving nor was he a passenger in the pickup at the time of the accident.

On November 15, 1976, the deposition of Hester was taken on behalf of Schiller. No material change in the facts set forth in Hester's affidavit appears in the deposition testimony.

On February 8, 1977, the district judge advised the attorneys for both parties by letter that he had considered plaintiff's motion for summary judgment and was overruling the motion since discovery had not been completed. The judge further advised the attorneys that upon completion of discovery, if the uncontroverted facts remained the same as set forth in the motion and affidavit on file, the motion could then be renewed and it would be sustained.

No further discovery was undertaken by defendant Schiller and no affidavits in opposition to the request for summary judgment were filed. On February 22, 1977, plaintiff renewed its motion for summary judgment and filed an additional affidavit in support thereof. The additional affidavit was executed by Larry D. King who stated under oath that he was present and witnessed the sale of the pickup by Hester to Bayless. King further stated under oath that Bayless agreed to get the title notarized by his uncle that same evening; that, after repeated demands were made by Bayless, Hester allowed Bayless to drive the pickup home "upon the stated fact that Mr. Bayless would drive the pickup home only and to park it." King in his affidavit further stated that

the pickup did not have a battery in it; that Hester removed a battery from his car and put it in the pickup; and that Hester told Bayless to return the battery and vehicle tag the following day.

In response to this motion and affidavit Schiller filed a motion for additional time to submit "a brief and affidavits if necessary on the issue of coverage." The motion stated: "It is anticipated that the question of whether there is coverage under the policy can be decided as a question of law." Thereafter defendant Schiller filed a brief but filed no affidavits or discovery depositions in opposition to the facts set forth in the plaintiff's affidavits and deposition. Schiller had previously requested additional time "to complete discovery as to whether the driver of the car at the time of the collision was a permittee covered under the usual omnibus clause of plaintiff's insurance policy." Additional time had been afforded yet Schiller failed to furnish anything which might bear upon the question of who was driving and riding in the car, and whether the occupants had obtained permission to use the vehicle.

Under the above circumstances the trial court was justified in ruling on the motion for summary judgment based on the uncontroverted facts set forth in plaintiff's affidavits and deposition. Allegations made in the pleadings and briefs will not sustain a genuine issue of fact when opposed by uncontradicted affidavits supporting a motion for summary judgment. *Ebert v. Mussett,* 214 Kan. 62, Syl. ¶ 3, 519 P.2d 687 (1974). Summary judgment may be granted when the record before the court shows conclusively there remains no genuine issue as to any material fact after the party against whom the motion was filed has failed to controvert a showing by affidavit, deposition, or otherwise that the moving party is entitled to judgment. *Ebert v. Mussett,* 214 Kan. 62; *Miller v. Sirloin Stockade,* 224 Kan. 32, 36, 578 P.2d 247 (1978).

The first legal issue confronting this court is whether there was a completed sale of the pickup from Hester to Bayless which would relieve Hester's insurance company from exposure under the policy. The Court of Appeals and the trial court determined the sale had not been completed, and that Hester's insurance company was not relieved from exposure under the policy. We agree. However, we cannot agree with the Court of Appeals' holding that the lack of a notarization on the title rendered the

sale fraudulent and void. The statute then in effect, K.S.A. 1974 Supp. 8-135(c)(2), did require the assignment of title to be executed by the owner before a notary public. However, K.S.A. 1974 Supp. 8-135(c)(6) further provides:

"It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder; unless, at the time of delivery thereof or at a time agreed upon by the parties, not to exceed fifteen (15) days after the time of delivery, there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle required to be registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void, unless the parties shall agree that the certificate of title with an assignment thereof shall pass between them at a time other than the time of delivery, but within fifteen (15) days thereof. . . ."

According to the uncontroverted facts Hester complied with all provisions of the statute except for the notarization of his signature, and when he delivered the title it was agreed the purchaser would have the signature notarized that very evening or return the certificate in the morning so Hester could get it notarized. Under these circumstances the sale was not fraudulent and void. The purpose of K.S.A. 8-135 is to require the issuance of a certificate of title for every vehicle required to be registered under the act, and to provide a means by which one may readily ascertain who is the owner of a motor vehicle, thus protecting the public from the evils arising from the unregulated use, transfer, and sale of such a vehicle. *Melton v. Prickett,* 203 Kan. 501, 456 P.2d 34 (1969).

The failure to notarize an assignment of title does not necessarily render a contemplated sale fraudulent and void. The opinion of this court in *In re Estate of Powell,* 222 Kan. 688, 692, 567 P.2d 872 (1977), holds:

"Although K.S.A. 8-135 was violated when Howard signed the title without the presence of a notary, no one has contended the signature on the title transfer was not Howard's signature. He intended to give Edith the mobile home and his failure to comply with K.S.A. 8-135 does not invalidate the transfer. . . ."

In the present case it was agreed between the parties that certain things remained to be done to complete the sale. The title was to be notarized. Bayless was to return the license tag and the battery which were temporarily placed on or in the pickup. There appears no evidence except that which indicates the parties did intend to fully comply with the statute on the following day when the sale would be completed. Until that time the sale was not

complete, title did not pass, and plaintiff's exposure under the Hester policy continued.

The next question is whether Schiller was insured as a permissive user under the policy issued to Hester. Under the uncontroverted facts the named insured, Hester, not only placed a restriction against persons other than Bayless using the vehicle but also limited Bayless' use of the vehicle to one trip home and a return trip to Hester's home the following day.

It is the general rule that a second permittee using a car solely for his own purpose is not entitled to protection under the omnibus clause of an automobile insurance policy where the named insured has expressly prohibited the first permittee from allowing other persons to use or operate the car. *Gangel v. Benson,* 215 Kan. 118, Syl. ¶ 3, 523 P.2d 330 (1974). Because of the harshness of this general rule some courts have found a sufficient basis under certain facts and circumstances to imply permission, despite an expressed prohibition against use by third persons. *Gillen v. Globe Indemnity Company,* 377 F.2d 328 (8th Cir. 1967). In *Gangel* the court quoted *Gillen* which recognized certain situations where consent to use a vehicle may be implied, even in the face of an expressed restriction against use by third parties. Permission may be implied in some cases if and when:

(1) The first permittee is actually in the vehicle;

(2) The car is being used for the benefit of the first permittee or the named insured;

(3) The first permittee has equitable title and unfettered control over the daily use of the car free of surveillance by the named insured;

(4) The named insured is aware of past violations of the restrictions but has continued to allow the permittee to have possession; or

(5) An emergency arises requiring such use. *Gangel v. Benson,* 215 Kan. at 124-125. See also *Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574, *rev. denied* 223 Kan. clxxi (1977); *United States Fidelity & Guaranty Co. v. Continental Ins. Co.,* 1 Kan. App. 2d 722, 573 P.2d 1106 (1977).

The affidavit by Hester, the named insured, negatived his presence in the car as either a driver or passenger. The defendant Schiller alleged no facts or circumstances which, if proven, might have brought him within one of the situations where consent to

use the vehicle might have been implied in face of the express prohibition against use by third parties. Under the uncontroverted facts of this case permissive use of the vehicle by Schiller or Moore could not be implied in the face of the expressed prohibition against such use when possession had been expressly restricted to Bayless, and Bayless was neither the driver nor a passenger in the vehicle when the accident occurred.

One final question is raised on behalf of Schiller. He claims that even if coverage does not exist under the liability provisions of Part I of Hester's policy there was coverage under Part II which provides benefits for bodily injury caused by uninsured motorists. In his brief he alleges that Moore was driving the vehicle and that he, Schiller, was a passenger covered by the policy. Part II of the policy provides payment as follows:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle; . . ."

Under the definition section of this coverage "insured" includes "any other person while occupying an *insured motor vehicle.*" "Insured motor vehicle" is defined as the described vehicle, "provided the actual use thereof is by the named insured, or by any other person with the permission of the named insured." So again the question of coverage is one of permission to use the vehicle, or the lack of it.

Schiller argues that uninsured motorist coverage is mandated by law and that insurance policy provisions which purport to condition, limit or dilute the unqualified uninsured motorist coverage mandated by the statute, are void and of no effect. *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 512 P.2d 507 (1973); *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973); *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976). The provision designating the persons covered against personal injury caused by an uninsured motorist includes the very same persons who are "the insured" in this policy of insurance. Their designation does not condition, limit or dilute the uninsured motorist coverage. In issuing a policy of insurance a company has a right of contract which permits the company to predetermine who is to

be "the insured." *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. at 451, 452. This court has held, however, that when that determination is once made the persons insured under the uninsured motorist coverage cannot then be so defined to limit or restrict the persons insured and thereby dilute coverage under the uninsured motorist provisions of the policy. A person covered or insured as a named insured in the policy cannot be eliminated by definition from uninsured motorist coverage. *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. at 609. In the present case the persons to whom the coverage is extended under the uninsured motorist provisions of the policy are restricted no more than in the other provisions of the policy. The persons predetermined for coverage in the policy are covered against the uninsured motorist. Insurance coverage is not present in either event when the vehicle is being operated by a third party without the express or implied permission of the insured.

K.S.A. 40-284 requires that insurance companies provide coverage for personal injuries sustained "by the insured." The persons insured under the general policy may be predetermined by the company to include a named insured, a relative, or a passenger occupying the insured vehicle provided the actual use of the vehicle is by the named insured or any other person with permission of the named insured. The uninsured motorist statute was not enacted to provide coverage for everyone. In event of theft or nonpermissive use of a vehicle a guest passenger of the unauthorized user, which passenger does not fall within the definition of "insured" contained in the policy, is not within the coverage mandated by the uninsured motorist statute, K.S.A. 40-284. *Nationwide v. Harleysville Mutual,* 203 Va. 600, 125 S.E.2d 840 (1962). See also 12 Couch on Insurance 2d § 45:646-648.

Under the uncontroverted facts of this case Schiller was not covered by either the liability or the uninsured motorist provisions of the policy issued to Hester. Summary judgment in favor of plaintiff and against the defendant Schiller was proper. The opinion of the Court of Appeals is reversed. The judgment of the district court in favor of plaintiff is affirmed.

HERD, J., dissenting: I respectfully dissent. The motion for summary judgment should not have been entered in this case because an unresolved issue of a material fact is present in the record.

A motion for summary judgment may be granted only if the record before the court conclusively shows there remains no genuine issue of a material fact unresolved. K.S.A. 60-256(c); *Motors Insurance Corporation v. Richardson,* 220 Kan. 288, 552 P.2d 894 (1976); *Brown v. Wichita State University, P.E.C., Inc.,* 217 Kan. 661, 538 P.2d 713 (1975); *Kern v. Miller,* 216 Kan. 724, 533 P.2d 1244 (1975); *State Bank of Burden v. Augusta State Bank,* 207 Kan. 116, 483 P.2d 1068 (1971); *Lawrence v. Deemy,* 204 Kan. 299, 461 P.2d 770 (1969); *Brick v. City of Wichita,* 195 Kan. 206, 403 P.2d 964 (1965).

"A summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over the facts.
. . . .

"A mere surmise or belief, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing him his day in court . . . ." *Brick v. City of Wichita,* 195 Kan. at 211.

The material facts pertinent to the case are found in the deposition of Robert Hester, the original owner of the pickup. A portion of that deposition is set forth below:

"Q. Did you consider the sale (of the pickup) already made even though he owed you the fifty dollars?
A. Yes, sir.
Q. You considered the truck to be his?
A. Yes.
Q. Once he paid you the hundred dollars, is that right?
A. Yes, sir; yes, sir.
Q. And it was his truck after he paid you the hundred dollars to do with as he pleased, isn't that correct?
A. If he wanted to, I guess.
. . . .
Q. Why did you tell him that he could only drive the truck home and then come back the next day?
A. Because it hadn't been notarized.
Q. Because of the registration hadn't been notarized?
A. Well, title or whatever you call it, yeah.
Q. Do you recall ever telling him that he was the only one that could drive the truck?
A. No, I can't recall that.
Q. You never told him that only he could drive the truck, is that correct?
A. Never did say.
Q. Pardon?
A. I couldn't say, I can't recall.
Q. Well do you recall ever telling him that the truck could only be driven by him?

A. No, sir, I can't.

Q. Did you tell him the truck could only be driven by him?

A. Sir?

Q. Did you tell him that the truck could only be driven by him?

A. No, sir.

. . . .

Q. Did you consider the truck to be his since he gave you a hundred dollars?

A. No, sir. I considered the truck to be his, not the stuff that was on it.

Q. You considered the truck to be his but you wanted to get back your plates?

A. Yes, sir.

Q. Is that right?

A. And that title.

Q. You wanted to get the title straightened out?

A. Yes, sir.

Q. So, you considered that the truck was his, so, you weren't worried about the truck, what you were worried about was the license plate and get the title straightened out, is that right?

A. More or less, yeah.

Q. Okay, and so far as you were concerned with the truck he could do with as he pleased, is that correct?

A. Yes, sir.

. . . .

Q. Can you tell me generally what the words you used were?

A. Well, he wanted—the car wouldn't start. He wanted to take it home, so, he asked me if it would be okay to drive the truck home. I said, yes, drive the truck home and bring it back so we could have it notarized and take the tags off.

Q. So, you said, 'drive it home and bring it back so I can get the tags—registration notarized.'

A. Yes.

. . . .

Q. Did you want to get the tags back on the truck?

A. Yes, sir.

Q. If they didn't come back the next day with the truck but drove his car and just dropped off the license tags, would that be all right with you?

A. No, sir.

Q. You wanted him to drive the truck back with the license tag?

A. No, sir, I wanted to see—I wanted to see the tag—title, make sure it was notarized.

Q. So, if he drove back in his car the next day with the tag, license tag and the notarizing of the registration, that would have been all right?

A. It was a pickup - yeah.

Q. He didn't have to drive the pickup back to you?

A. No, sir."

In a sworn statement made October 22, 1974, Robert Hester

stated: "[Bayless] came to my home the following day and purchased it. I endorsed the back of the title and Mr. Bayless left with the vehicle. . . ."

The unresolved issue of fact is whether Hester expressly or impliedly gave Bayless permission to let a second permittee drive the pickup. It is noted that:

"[I]n every case where the first permittee permits another to use the insured automobile, a factual determination must be made whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus render the latter an additional insured under the omnibus clause." *Krebsbach v. Miller,* 22 Wis. 2d 171, 175-76, 125 N.W.2d 408 (1963). See 7 Am. Jur. 2d, Automobile Insurance § 116, p. 431.

Hester's testimony was later weakened on cross-examination and controverted in an affidavit from Larry D. King; however, this bears only on the weight of evidence. This court has held the existence of material facts and all reasonable inferences in support thereof should be resolved strictly against the movant in a motion for summary judgment. *Shehi v. Southwest Rentals, Inc.,* 199 Kan. 265, 428 P.2d 838 (1967); *Price, Administrator v. Holmes,* 198 Kan. 100, 422 P.2d 976 (1967); *Jarnagin v. Ditus,* 198 Kan. 413, 424 P.2d 265 (1967).

The general rule forbidding coverage of a second permittee under the omnibus clause where the named insured has expressly prohibited the first permittee from allowing others to use the car, *Gangel v. Benson,* 215 Kan. 118, 523 P.2d 330 (1974), was noted in the majority opinion. In addition, the majority has recognized one of the exceptions to that rule: that implied consent from the named insured may be found where the first permittee has the equivalent of an equitable title and has unfettered control over the use of the car outside the surveillance of the named insured. *Gangel v. Benson,* 215 Kan. 118; *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 580, 584 P.2d 1264 (1978); *Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574 (1977). It is precisely this exception that is applicable to the instant case.

Here, the evidence is uncontroverted that Hester sold the pickup to Bayless but the sale was incomplete because the assignment on the back of the bill of sale, though executed and delivered, was not notarized. Thus, Hester remained the holder of the legal title to the pickup, K.S.A. 1974 Supp. 8-135(c)(6), and it

was covered by his insurance policy. *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P.2d 931 (1967). The rest of the facts are disputed but viewing the evidence in the most favorable light to the appellant, Bayless was owner of the equitable title to the pickup with possession under color of title, and had the unrestricted authority of such an owner.

Turning to the omnibus clause of the insurance policy on the pickup, I will determine if the unresolved fact issue is material. The policy insured the named insured, Hester, and "any other person while using such automobile and any other person or organization legally responsible for its use, provided the actual use of such automobile is by the named or with his permission. . . ."

In addition to the policy provisions, applicable statutory law must be read into the policy. *Canal Insurance Co. v. Sinclair*, 208 Kan. 753, Syl. ¶ 3, 494 P.2d 1197 (1972).

K.S.A. 1974 Supp. 40-3107 provides:

"Every policy of motor vehicle liability insurance issued by an insurer to an owner residing in this state shall:

. . . .

(b) Insure the person named therein and any other person, as insured, using any such vehicle with the expressed or implied consent of such named insured, against loss . . . ."

When all of the testimony and inferences are resolved against appellee for the purposes of testing the motion for summary judgment, I find that Bayless is an equitable owner of the pickup who has permission from Hester to use the vehicle. The only restriction placed on Bayless was for him to return the owner's tags the next day and notarize the signature on the bill of sale. This presents a clear cut issue of a material fact about which reasonable persons could disagree, making the granting of summary judgment premature. I recommend the case be reversed and remanded to the trial court for further findings.

SCHROEDER, C. J., joins in the foregoing dissenting opinion.