WORDEN TRADING COMPANY, Plaintiff and Respondent, *v.*
STEVE TRENKA, Defendant and Appellant.

No. 14021.
Submitted June 14, 1979.
Decided Nov. 19, 1979.
602 P.2d 601.

Jones Law Firm, Billings, Willis B. Jones argued, Billings, for defendant and appellant.

Berger, Anderson, Sinclair & Murphy, Billings, James J. Sinclair argued, Billings, for plaintiff and respondent.

MR. JUSTICE SHEA delivered the opinion of the Court.

Defendant, Steve Trenka, appeals from a judgment of the Yellowstone County District Court ordering defendant to pay several promissory notes executed by him in favor of the plaintiff, Worden Trading Company.

Plaintiff filed a complaint on June 15, 1976 alleging that defendant Trenka owed plaintiff the principal and interest on four promissory notes allegedly reexecuted in 1965. In seeking avoidance of the eight year statute of limitations provided for in section 27-2-202(1), MCA, plaintiff alleged that defendant Trenka had paid interest on each of the promissory notes on December 10, 1970, allegedly constituting an acknowledgement under section 27-2-409, MCA. Defendant Trenka asserted several affirmative defenses, including the statute of limitations. We deem this affirmative defense to be controlling of this case.

Beginning in 1962, Trenka obtained a number of loans from Hans Hansen, the president of Worden Trading Company, and also the president of the Farmers State Bank of Worden. In both capacities Hans Hansen entered into numerous transactions with Trenka. During the ensuing years Trenka looked upon Hans Hansen as a friend whom he could trust, and the transactions continued with no record of payments or loans ever being furnished to Trenka. In June 1965, the loans to Trenka were consolidated into two promissory notes of $10,000.00 and $3,038.40, payable after December 1, 1965. In addition, in October 1965, Hans Hansen

agreed to provide Trenka with additional loans to finance an onion business. The "onion loans" were made by means of promissory notes of $1,200.00 and $700.00 which were due and payable to Worden Trading Company on demand.

After Hans Hansen's death in 1967, his son Richard Hansen succeeded to his father's positions as president of the Farmers State Bank of Worden and of Worden Trading Company. Richard Hansen then undertook to collect certain promissory notes signed by Trenka, although he knew nothing of the circumstances or particulars of the loans.

During this period, Trenka had two or more safe-deposit boxes in the Farmers State Bank which contained valuables and personal items and on which he paid a rental fee. When, Trenka attempted to remove some of these items he was prevented from doing so by Richard Hansen, who would not release the contents without the payment of money. In August 1970, Trenka attempted to take certain silver dollars and other valuable coins from the safe-deposit box, but Hansen first demanded a payment. Trenka's girlfriend, (now his wife), Mabel Parker, made out a check to Trenka for $1,000.00 which Trenka then endorsed to the Worden Trading Company. Hansen then released the coins. Again, on December 10, 1970, Hansen refused access to a safe-deposit box containing a diamond ring and other valuable jewelry. Trenka intended to give the diamond ring to his girlfriend as a Christmas present. Trenka's girlfriend wrote out a check to the Worden Trading Company for $1,500.00. Hansen then released the jewelry. It is this December 10, 1970 payment which Hansen and Worden Trading Company contend operated to acknowledge the debts and thus prevent the statute of limitations from expiring.

Trenka made no more payments after the December 10 payment. On June 15, 1976, Hansen filed suit on the four notes bearing the execution date of 1965. Hansen alleged that on December 10, 1970, Trenka paid interest on each of the four promissory notes. Hansen alleged that he applied the $1,500.00 check proceeds to interest on each of the four promissory notes.

The trial court totally ignored a ruling on Trenka's affirmative defense of the statute of limitations. The findings and conclusions contained no reference to Trenka's claimed affirmative defense. The court entered judgment in the amount of $25,713.09, which included the full amount of the principal on each of the four notes, interest still owed on each of the four notes, and attorney fees.

■ Essential to Hansen's right to avoid application of the statute of limitations to bar his claim, is a determination that the $1,500.00 check issued on December 10, 1970 operated to suspend the running of the statute. To operate as a suspension section 27-2-409, MCA, it must be established that the payment, whether it be of principal or interest, was voluntarily made to a clearly identified debt. *Mercer v. Mercer* (1947), 120 Mont. 132, 180 P.2d 248. Also see, *Jarnagin v. Ditus* (1967), 198 Kan. 413, 424 P.2d 265; 51 Am.Jur.2d *Limitations of Actions*, § 366.

■ Trenka argues that both of the 1970 payments were involuntary; that he was forced or that his girlfriend Mabel Parker, was forced to make the payments in order to obtain the contents of his safe-deposit box. Hansen and Worden Trading Company meet this argument by contending, without citation of authority, and without any evidentiary support in the record, that he had a valid security interest in the contents of the safe-deposit boxes to secure or partially secure the payment of the promissory notes. He argues therefore, that when he demanded payment of money before he would release the contents to Trenka, he was merely exercising the legal right of a creditor to substitute one form of collateral for another. He does not directly contend, however, that the payments were thereby rendered voluntary, but that is the implication of his arguments.

It is undisputed that Trenka rented the safe-deposit boxes involved, and neither Hansen, Worden Trading Company, or, for that matter, Farmers State Bank, were cosignatories to the safe-deposit box rental agreements. Nor did Trenka ever assign or allow Hansen, Worden Trading Company or Farmers State Bank to have an interest, security, or otherwise, in the safe-deposit boxes. The

right of Hansen, or Worden Trading Company, or Farmers State Bank to control the contents of the safe-deposit boxes did not exist under the facts of this case. Hansen, whether he was acting as president of Worden Trading Company or as president of Farmers State Bank in refusing Trenka's access to the safe-depossit boxes, was clearly abusing his authority. Neither the $1,000.00 payment in August or the $1,500.00 payment on December 10, 1970 can be called voluntary by any stretch of the imagination. Indeed, Trenka's testimony as to how he was forced to pay Richard Hansen in order to obtain items from his safe-deposit boxes, was undisputed. Mabel Parker, who was present on both occasions, confirmed this testimony. Indeed, it was Mabel Parker who actually made the payments each time, not Steve Trenka.

■ Furthermore, assuming the existence of a valid security interest in the safe-deposit boxes, the payments under the circumstances of this case still could not operate to suspend the running of the statute of limitations. If, as Hansen and Worden Trading Co. argue, payment was merely a substitution of one form of collateral for another, Hansen would not have applied the proceeds of the $1,500.00 payment to the interest on each of the four promissory notes. Assuming Hansen's right to cash the $1,500.00 check and apply the proceeds to the four promissory notes, the payments here were nothing more than a creditor exercising his legal right and the debtor submitting to the exercise of that right by making the payments pursuant to the security agreement. Such submission does not suspend the running of the statute of limitations. *Quaker City Choc. & Con. Co. v. Delhi-Warnock Bldg. Ass'n* (1947), 357 Pa. 307, 53 A.2d 597; *In re Sanchez' Estate* (1945), Sur., 58 N.Y.S.2d 230.

Accordingly, not only were the payments involuntary because Hansen or Worden Trading Company, did not have a valid security interest in the safe-deposit boxes, but even under Hansen's own theory, the payment did not suspend the running of the statute of limitations.

The judgment of the District Court is reversed and the cause

ordered dismissed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON and DALY concur.

JACK D. SHANSTROM, District Court Judge, sitting in for Mr. Justice Sheehy, dissents.