No. 57,933

ROGER C. KINNEY, WILLIAM O. KINNEY, GEORGE E. KINNEY, and
FRANK W. KINNEY, *Appellants*, v. STATE OF KANSAS and KANSAS
FISH AND GAME COMMISSION, *Appellees*.

(710 P.2d 1290)

Opinion
filed December 6, 1985.

*Phyllis F. Wendler,* of Law Offices of Michael J. Friesen, P.A., of Garden City,
argued the cause, and *Michael J. Friesen,* of the same firm, was with her on the
briefs for appellant.

*Bruce E. Miller,* assistant attorney general, argued the cause, and *Robert T.
Stephan,* attorney general, and *John W. Campbell,* assistant attorney general,
were on the brief for appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal from a summary judgment entered
in favor of defendants in an action to quiet title to certain land
and to recover damages, brought against the State of Kansas and
the Kansas Fish and Game Commission. The plaintiffs' claim is
based upon a reversion clause in a warranty deed executed by
the Kinney Land and Cattle Company in 1934. The plaintiffs
claim to be the survivors in interest and heirs of the stockholders
of the corporation, now dissolved.

As a basis for their cause of action, the plaintiffs rely on
provisions in a general warranty deed dated February 8, 1934, in
which the Kinney Land and Cattle Company conveyed to the

State of Kansas certain real estate located in Finney County. The property conveyed contained approximately 790 acres and is currently known as the Finney County State Park. Involved in this case are the fifth and sixth clauses of the deed, which provided as follows:

"It is understood by the parties hereto that this conveyance constitutes a donation of the above property for state park purposes within the meaning of Chapter 124 and Chapter 127 of the Special Session Laws of 1933.

"CLAUSE OF REVERSION

"It is further agreed and understood by and between the parties hereto that the premises herein described are to be used by the party of the second part as a public forestry, fish and game preserve and recreational state park, and in so using the said premises a lake of at least 150 acres is to be constructed thereon, and said premises are to be used and maintained for purposes aforesaid, and if party of the second part fails to so use and maintain said premises, then and in that event the title to the said property hereinbefore described shall revert to the party of the first part, its successors or assigns."

Chapter 124 of the Special Session Laws of 1933, referred to in clause five, provided in part as follows:

"SECTION 1. That whenever any person donates or has donated real estate to the state of Kansas for use as a state park upon which real-estate taxes have been levied and assessed and upon which penalties and charges have accrued, the board of county commissioners of the county in which such real estate is situated are hereby authorized and directed to remit and cancel all such taxes, penalties and charges."

Chapter 127 of the Special Session Laws of 1933 provided in part as follows:

"SECTION 1: That section 1 of chapter 332 of the Session Laws of 1933 is hereby amended to read as follows: Section 1. That any landowner owning land in the state of Kansas not within the corporate limits of any city in this state who shall by the construction of a dam across any dry watercourse form upon his own land one or more reservoirs for the collection and storage of surface water, and who shall maintain such reservoir or reservoirs in such condition as to collect and store such water, or who shall donate to the state of Kansas or any of its agencies a tract of land on which the state, or any of its agencies, may erect and maintain a reservoir for the storage of water, shall be entitled to a reduction of the assessed valuation of the piece of land upon which such reservoir is located, of forty dollars ($40) for each acre foot of storage capacity afforded by such dam: *Provided,* That the total amount of such reduction shall not exceed forty per cent (40%) of the assessed valuation of the entire contiguous acreage, owned by the landowner and upon which such reservoir or reservoirs are located . . . ."

Simply stated, it is the claim of the plaintiffs that the warranty deed of 1934 conveyed to the State a fee simple determinable, sometimes described as a fee simple subject to a condition

subsequent, whereby the interest of the State was to be terminated and the title to revert to the grantor, its survivors or assigns, if the State, as grantee, failed to use and maintain the premises for the purposes set forth in the reversion clause. The plaintiffs contend that the State has failed to use and maintain the premises for the stated purposes, and, therefore, title to the land has reverted to them as the survivors in interest of the Kinney Land and Cattle Company.

At the time summary judgment was entered by the trial court in favor of the State, the case had not been tried on the merits nor had the parties been afforded an opportunity to complete their discovery. In effect, the trial court entered summary judgment without having resolved all of the issues raised in the case. In order to understand the status of the case on the appeal, the following proceedings in the trial court should be noted.

Plaintiffs filed their petition on November 21, 1980. On March 4, 1981, the plaintiffs served notice on the defendants that the case had been set for a discovery conference to be held on March 30, 1981. A discovery conference was held on the date set, and counsel for the parties made preliminary statements to the court. The trial judge raised a legal question, which he felt should be determined at the outset in order to effectuate orderly discovery in the case. The trial court noted the clause of reversion contained in the deed and directed the parties to brief the following question: Does reverter arise under the terms above set forth when the lake in question had no water prior to and subsequent to the filing of this action as same is construed with the other provisions, and its effect upon the entire grant of approximately 790 acres?

The trial court allowed counsel time to file briefs, stating that it would determine the legal question and would then schedule a subsequent discovery conference. The defendants filed a motion for partial summary judgment which raised the identical legal question suggested by the trial court. The parties filed their briefs.

On December 13, 1984, the trial court filed its memorandum decision in which it made the following findings of fact:

"1. The defendant, State of Kansas, is a sovereign state of the United States of America (Act, Jan. 29, 1861, Ch. 20, Section 1, 12 Stat. 126).

"2. Defendant, Kansas Fish and Game Commission, is a state commission created by statute (K.S.A. 1983 Supp. 74-3301, *et seq.*).

"3. Plaintiffs allege in their petition they are the surviving heirs of the stockholders of Kinney Land and Cattle Co., and as such, are successors to the reversion or possibility of reverter created by the general warranty deed of February 8, 1934.

"4. On February 8, 1934, Kinney Land and Cattle Company owned and possessed in fee simple certain lands situated in Finney County, Kansas, more particularly described as follows:

"The West One-Half (W/2) of Section Thirty-one (31), Township Twenty-one (21), Range Twenty-seven (27); the Southwest Quarter (SW/4) of Section Thirty (30), Township Twenty-one (21), Range Twenty-seven (27); the Southeast Quarter (SE/4) of the Northeast Quarter (NE/4) and the Southeast Quarter (SE/4) and the East One-Half (E/2) of the Southwest Quarter (SW/4), Range Twenty-Eight (28); the Diagonal Northwest One-Half (NW/2) of the Northeast Quarter (NE/4) of the Northwest Quarter (NW/4) of Section Six (6), Township Twenty-Two (22), Range Twenty-Seven (27) West of the 6th P.M.

"Also a strip of land 60 feet wide to be used as a roadway, beginning at the center of the south line of Section Six (6), Township Twenty-Two (22), Range Twenty-Seven (27) and extending north to the center of Section Thirty-One (31), Township Twenty-One (21), Range Twenty-Seven (27) West of the 6th P.M.

"5. On February 8, 1934, Kinney Land and Cattle Company executed and delivered to defendants a general warranty deed conveying, for consideration, the aforementioned property to defendant as a donation for a public forestry, fish and game preserve and recreational state park and in so using the said premises a lake of at least 150 acres is to be constructed thereon, within the meaning of Chapter 124 and Chapter 127 of the Special Session Laws of 1933.

"6. The aforementioned general warranty deed was recorded in the office of the Finney County Register of Deeds in book 158 at page 652, on the 22nd day of March, 1934.

"7. A dam of 2,200 feet in length and 43 feet in height, with a capacity to create a lake of 325 acres was built on the aforementioned property by the United States Civilian Conservation Corps on behalf of the defendant in 1934.

"8. The Finney County State Park has been subject to improvements provided by or for the defendant, Kansas Fish and Game Commission, said improvements including the planting of trees, the building of fences, the maintenance of the lake's dam and road improvements. As to the years and dates when said improvements were made same are in controversy but that said improvements have, in fact, [been] made is uncontroverted.

"9. It is further uncontroverted that the Finney County State Lake has contained water in the area upon which the dam was constructed and that intermittently between 1934 and 1970 the lake has contained water or has been dry but has never reached the 150 acre minimum as set forth in the deed. And, furthermore, since 1970 if any water has accumulated in the area behind the dam it has been minimal and has been for very limited time frames.

"10. Although controverted by the plaintiffs it must be concluded by the Court that there is no controverted fact that the biennial reports, Fish and Game Commission, 1934 to present reflect that there has been a Finney County State Park utilized as a public forestry, fish and game preserve and recreational park."

The trial court made the following conclusions of law:

"In reading the clause of reversion as contained in the four corners thereof the Court must conclude that no ambiguity exists. The clause of reversion is clear on its face; that is, the premises (land conveyed) are to be used as a public forestry, fish and game preserve and recreational state park. There is no ambiguity whatsoever as to the use of the premises. The only condition in conveying the premises is that a lake of at least 150 acres is to be constructed thereon. The evidence on the uncontroverted facts is clear; that is, that a lake of at least 150 acres was, in fact, constructed upon the premises. There is nothing contained in the clause of reversion which says that the lake of 150 acres must be maintained. Only that the premises which were conveyed for a public forestry, fish and game preserve and recreational state park be maintained.

"The uncontroverted facts reflect that there is still a dam of the length and height described located upon the property and that the only thing that is not existing is water contained therein. This allegation by the plaintiffs is without merit in a careful review of the clause of reversion. The Court finds that there is no requirement upon the defendants to make sure that there is water of at least 150 acres behind the dam to constitute a lake. The only requirement that exists upon the defendants is that the lake be constructed and that the rest of the property be maintained with the integrity for which it was conveyed."

The trial court then concluded that the motion of the defendants for partial summary judgment must be granted. On January 22, 1985, a journal entry was signed by the trial court sustaining defendants' motion for partial summary judgment but at the same time making a finding that the sustaining of the defendants' motion rendered the remaining litigation moot and judgment must be in favor of defendants and against plaintiffs' cause of action. Thus, although purporting only to be an order in favor of the defendants for *partial* summary judgment, the court found that the defendants were entitled to judgment against the plaintiffs on their cause of action. The plaintiffs, having been placed in a position where their cause of action had been terminated, filed a timely appeal to the appellate courts. The appeal was assigned to the Supreme Court for its determination.

The basic issue raised on the appeal is this: Does the fact that the Finney County State Lake located on the land no longer contains a body of water of 150 acres serve as a basis for the activation of the reversion clause so as to terminate the State's title to the real estate and cause title to revert to the plaintiffs? In order to determine this basic issue it would be helpful to consider certain general principles of law which are applicable in cases involving reversion clauses. In this case, the State, as grantee, owns a determinable or qualified fee in real estate which has all the attributes of a fee simple except it is subject to

being defeated by the happening of a condition which is to terminate the estate. An estate in fee simple determinable is created by any limitation which: (1) creates an estate in fee simple and (2) provides that the estate shall automatically expire upon the occurrence of the stated event.

In the past, this court has determined issues involving estates in fee simple determinable. In *Curtis v. Board of Education*, 43 Kan. 138, 144, 23 Pac. 98 (1890), it was stated that the authorities are uniform that an estate upon condition subsequent, which estate after having been fully vested may be defeated by a breach of the condition, is never favored in law, and that no deed will be construed to create such an estate unless the language to that effect is so clear that no room is left for any other construction. In *Ritchie v. K.N. & D. Rly. Co.*, 55 Kan. 36, 57, 39 Pac. 718 (1895), it was held that an instrument containing a condition subsequent, working a forfeiture of an estate, is to be strictly construed and its terms will never be extended by construction. This general rule is based upon the theory that, since a deed is the act of the grantor, it will be construed most strongly against him. See *Rose v. School District No. 94*, 162 Kan. 720, 726, 179 P.2d 181 (1947). Where, however, a deed clearly creates a fee simple determinable and reserves a reversionary interest in the grantor, such provisions will be enforced. See, for example, *Thompson v. Godfrey*, 191 Kan. 102, 379 P.2d 269 (1963).

The clause of reversion contained in paragraph six of the warranty deed requires that the premises be used by the State, as grantee, as a "public forestry, fish and game preserve and recreational state park." At the time the deed was executed, the statutes of Kansas provided for the establishment of public forestry, fish and game preserves, and recreational grounds. G.S. 1935, 32-215 authorized the forestry, fish and game commission, among other things, to establish, maintain, and provide for sanctuaries, in which game, game birds, fur-bearing animals or fish may breed or rest; to replenish hunting and trapping grounds and water or fishing waters; and to establish, maintain, and improve recreational grounds for the purpose of affording recreational facilities for the citizens of Kansas. That statute was enacted in 1927 and was in full force and effect at the time the warranty deed was executed in the present case.

These same basic powers are given to the fish and game

commission today by virtue of our present statutes in K.S.A. 32-201 *et seq.*

G.S. 1935, 32-214 gave the forestry, fish and game commission broad power and authority to acquire lands by donation or by purchase for the purpose of establishing and maintaining the same as a public forestry, recreational grounds, and fish and game preserves; to acquire or provide for the building of reservoirs, dam or lakes for impounding water and for providing for the planting of forestry trees; to supervise building and construction work of all kinds; to plant forestry trees and to make improvements on the property including the upkeep of roads and to do all and anything possible to carry out the intent of the act. Thus, by statute, the fish and game commission, acting on behalf of the State, is obviously vested with great power and discretion in using donated lands for a public forestry, fish and game preserve or a recreational state park.

In the *City of Wichita v. Clapp*, 125 Kan. 100, 263 Pac. 12 (1928), it was held that the use of a portion of a public park as an airport came within the proper and legitimate uses for which public parks are created. In the opinion, at page 101, the court discussed the meaning of the term "park purposes." The court stated:

"The specific question for consideration is whether park purposes may include an airport or landing field for airplanes. Under various authorities, the expression 'park purposes' has been held to include a race track, a tourist camp, bridle trails, boating, bathing, refreshment and lunch stands, providing bathing suits, towels and rooms for bathers, dressing pavilion, waiting room for street cars, refreshment and shelter room for the public, grandstand, ball games, baseball diamond, race meets, tennis courts, croquet grounds, children's playgrounds, hotels, restaurants, museums, art galleries, zoological and botanical gardens, conservatories, and many other recreational and educational facilities. In *Bailey v. City of Topeka*, 97 Kan. 327, 330, 154 Pac. 1014, this court quoted approvingly from Dillon on Municipal Corporations, to the effect that:

" 'A park may be devoted to any use which tends to promote popular enjoyment and recreation.' (Dillon, Municipal Corporations, 5th ed. § 1096, p. 1749.)"

In 1955, the legislature provided for a state park and resources authority (K.S.A. 74-4501 *et seq*). The legislature gave broad and comprehensive definitions to the terms "state park" and "park facilities." See K.S.A. 74-4502(d) and (e).

These various statutes and authorities are cited to show the broad interpretation which has been given to the terms "forestry,

fish and game preserve and recreational state park." The trial court in this case granted partial summary judgment in favor of the defendants, holding that the terms of the deed do not support a forfeiture of the State's interest in the property simply because the lake constructed on the premises contained a body of water of less than 150 acres prior to and subsequent to the filing of this action. We agree with the trial court. The deed should be construed to require only that the State in good faith maintain the property as a public forestry, fish and game facility and as a recreational state park. The grantor obviously had in mind an area dedicated to the protection and conservation of natural surroundings, game and fish, and a place where the people could enjoy such natural beauties. The lake is an important factor to be considered in determining whether the State in good faith has maintained the entire property for the intended uses. The maintenance of the lake, however, is not the controlling consideration but is only a part of the big picture. Under the circumstances, we hold that the trial court correctly held that the State of Kansas had not forfeited its title to the land simply because the quantity of water contained in the lake has not been sufficient to completely fill an area of 150 acres. The quantity of water contained in the lake is bound to vary from year to year depending upon the amount of rainfall and any other available sources of water in the area.

As noted above, however, the trial court, instead of restricting its decision to a partial summary judgment on the single issue presented, found that all other issues in the case were moot and that judgment should be rendered in favor of the defendants and against the plaintiffs "on their cause of action." We hold that, in entering that judgment, the trial court committed reversible error. The final summary judgment rendered was erroneous because it was prematurely granted and denied to the parties the opportunity to complete their discovery and present evidence on the ultimate factual issue presented in the case: Whether the state has in good faith used and maintained the premises for the intended purposes.

In *Lawrence v. Deemy*, 204 Kan. 299, 461 P.2d 770 (1969), this court reviewed our law relating to summary judgment and stated as follows:

"Generally before a summary [judgment] may be granted, the record before

the court must show conclusively that there remains no genuine issue as to a material fact, and that the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonable, that a party cannot prevail upon a trial will not warrant a summary judgment if there remains a dispute as to a material fact which is not clearly shown to be sham, frivolous, or so unsubstantial that it would be futile to try the case (*Knowles v. Klase*, 204 Kan. 156, 460 P.2d 444; *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P.2d 1019.) The manifest purpose of a summary judgment is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues do exist. If there is a reasonable doubt as to their existence, a motion for summary judgment will not lie. (*Secrist v. Turley*, 196 Kan. 572, 412 P.2d 976.) A court, in making its determination, must give to the party against whom summary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration. (*Shehi v. Southwest Rentals, Inc.*, 199 Kan. 265, 428 P.2d 838; *Jarnagin v. Ditus*, 198 Kan. 413, 424 P.2d 265; *Brick v. City of Wichita*, 195 Kan. 206, 403 P.2d 964.)

"Regardless of how refined or sophisticated we attempt to state the summary judgment rule, we always return to the language of the statute itself (K.S.A. 60-256[c])—there must remain 'no genuine issue as to any material fact.' " 204 Kan. at 301-02.

Although there was apparently some evidence presented to the trial court at the informal discovery conference that improvements had been made on the land and that the lake had contained water intermittently down through the years and that various sums of money have been spent on the property, such evidence has not been included in the record on appeal and the parties have not been furnished a full opportunity to complete their discovery and develop evidence to be presented on the primary issue in the case, set forth above, or on other issues raised by the parties. We have no hesitancy in holding that final summary judgment in the case was prematurely granted and that the case must be remanded to the trial court for further proceedings.

The judgment of the district court is affirmed in part and reversed in part and remanded for further proceedings in accordance with the views expressed in this opinion.