NOT DESIGNATED FOR PUBLICATION

No. 126,107

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ERIC S. CLARK,
*Appellant*,

v.

CITY OF WILLIAMSBURG, KANSAS, RALPH STOVER
in his official capacity as Mayor of the
CITY OF WILLIAMSBURG, KANSAS,
and RALPH STOVER, in his individual capacity,
*Appellees*.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Submitted without oral argument. Opinion filed January 19, 2024. Affirmed.

*Eric S. Clark*, appellant pro se.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellees.

Before COBLE, P.J., MALONE and WARNER, JJ.

WARNER, J.: Eric Clark filed this lawsuit against the City of Williamsburg and its mayor, Ralph Stover, to determine who owns land next to a road in Williamsburg. The district court eventually granted summary judgment in favor of the City, finding that the City—and not Clark—owned the property. Clark appeals. After carefully considering the parties' arguments and the record before us, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The central question in this case is who owns two tracts of land adjacent to Dane Avenue, which was formerly Kansas Highway 273 (or K-273), in Williamsburg. In 1970 and 1972, Darreld and Helen Goodwill deeded two plots of land—consisting of .23 acres and .26 acres, respectively—to the Kansas Highway Commission. Each deed, titled a "Deed for Highway Purposes," transferred "fee simple" rights to the land to the Commission but retained interests in the oil, gas, and mineral rights.

In September 2002, the City of Williamsburg annexed all of K-273 in Franklin County from the State. Later that month, the Secretary of Transportation adopted a resolution removing K-273 from the state highway system, stating "the existing road shall revert to local public authority." And in November 2002, the State issued a quitclaim deed to the City for various tracts of land in Franklin County. This deed explicitly referenced the .26 acres of land transferred to the State in 1972 by the Goodwills but did not mention the .23 acres transferred in 1970.

Meanwhile, the Goodwills sold their remaining property. In 2003, Clark bought that remaining property from the Goodwills' successors in interest. Clark's deed stated that he was receiving the land that used to belong to the Goodwills "except [for the] land deeded for highway [purposes]."

In June 2020, the City's mayor, Stover, was mowing grass next to Dane Avenue in Williamsburg on land Clark believed was his. Stover apparently damaged trees, flowers, and electrical supply lines. Clark asked city officials to acknowledge that he owned the land, and when they refused, he filed this quiet-title action to determine the land's ownership.

2

In the lawsuit, Clark sought a declaratory judgment that he owned the two tracts and that the City only held a 20-foot easement from the centerline of Dane Avenue. He also sought damages for the harm Stover caused when he mowed the land. The City responded that it owned the two tracts of land in fee simple. It asserted that it had acquired the land from the State when the State removed the K-273 from the state highway system and issued the quitclaim deed to the City. The City also argued that if it did indeed only hold an easement on the land, the easement ran 30 feet from the centerline of Dane Avenue, not 20 feet like Clark claimed.

The case proceeded through discovery, and both parties eventually moved for summary judgment. Clark sought a declaratory judgment that he owned the land and damages for a trespass against chattels claim against Stover, and the City sought the opposite—a declaratory judgment that it owned the land and a dismissal of all Clark's other claims.

The district court held a hearing on the opposing motions. At the hearing, Clark suggested that the district court only decide who owned the land and allow him to appeal that ruling, leaving the trespass question for another day. The City did not oppose this procedure.

The district court granted summary judgment for the City. The court found that the City, and not Clark, owned the two tracts of land in fee simple, though Clark retained the mineral rights (a matter neither party contested). The court also found that the City had a 30-foot right-of-way on either side of the centerline of Dane Avenue. The court reserved ruling on Clark's trespass claim. Clark appeals.

DISCUSSION

Clark challenges both rulings by the district court. He claims the court erred when it found that the City, not Clark, owns the two tracts of land adjacent to Dane Avenue. And he asserts that the court erred when it found that the City had a 30-foot right-of-way, not a 20-foot right-of-way, from the centerline of Dane Avenue. The City urges us to affirm both rulings.

We note that although the parties and the district court treated these questions independently, they are in essence swallowed by Clark's quiet-title claim. The two tracts of land—which we refer to as the 1970 tract and the 1972 tract—are adjacent to the road and thus include the contested right-of-way. The extent of the City's right-of-way would only become important if we were to conclude that Clark owned the 1970 or 1972 tract. But we agree with the district court that Clark does not own that property; the Goodwills transferred that property in fee simple to the State more than 50 years ago. Thus, the Goodwills and their successors could not have transferred that same property to Clark in 2003. As we explain more fully below, we affirm the court's judgment in favor of the City.

1. *This court has jurisdiction to consider Clark's appeal.*

Before considering the merits of the parties' arguments, we pause to address a procedural question concerning our authority to hear this appeal. As we have indicated, the district court granted summary judgment to the City on most of the claims in the case (those relating to the ownership of the property and the extent of the City's right-of-way), but it did not rule on Clark's trespass claim. The court's journal entry of judgment certified the ownership and right-of-way decisions for interlocutory appeal under K.S.A. 60-2102(c). Clark, however, did not file an application for interlocutory appeal with this court within 14 days, as that provision requires. See K.S.A. 2022 Supp. 60-2102(c).

Instead, he filed a notice of appeal with the district court and docketed the appeal with the Court of Appeals in the ordinary fashion a few weeks later.

Most cases that come before us in this manner are final judgments—judgments that dispose entirely of the merits of the claims in a case—appealable under K.S.A. 2022 Supp. 60-2102(a)(4). Accord *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 1, 836 P.2d 1128 (1992) ("A final decision is one that finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court."). This is important because the right to appeal is a statutory one; Kansas appellate courts only have jurisdiction to hear an appeal if Kansas statutes allow it. *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018). Both parties agree that the district court's decision that Clark appeals is not a final judgment, as the district court did not rule on Clark's trespass claim. This court thus ordered the parties to brief why this court has jurisdiction to hear this appeal before the trespass claim has been resolved.

In his response, Clark points out that we have jurisdiction to consider this appeal under K.S.A. 2022 Supp. 60-2102(a)(3)—a statute that allows parties to appeal from "an order involving . . . the title to real estate." To invoke this statute, the order affecting real estate must have "some semblance of finality." *In re Austin*, 200 Kan. 92, 94, 435 P.2d 1 (1967); *Cusintz v. Cusintz*, 195 Kan. 301, 302, 404 P.2d 164 (1965). We agree with the parties that the district court's decision that Clark does not own the two tracts of land in question carries the finality required to proceed on appeal. We therefore turn to the district court's summary-judgment ruling.

2. *The district court correctly held that Clark does not own the land in question.*

Clark challenges the district court's ruling that he does not own the 1970 and 1972 tracts in two main ways. He asserts that the court erred when it found that the Goodwills transferred that land in fee simple; he points out that although the language of the 1970

5

and 1972 deeds include phrases Kansas courts have typically found to create fee-simple grants, those deeds state the transfer was "for Highway Purposes." He also points out that the State's quitclaim deed in 2002 made no reference to the 1970 tract; he argues that this, at the very least, leaves a factual question as to who owns that property. Kansas caselaw undermines both assertions.

Clark first argues that the 1970 and 1972 deeds created a limited transfer for highway purposes. In doing so, Clark acknowledges that the Goodwills transferred some interest in the two tracts of land to the State in 1970 and 1972, and those deeds stated they were transferring the land in fee simple. But he claims the deeds' reference to the land's usage for highway purposes limited the nature of the transfer, and ownership of the property reverted to him (or to his predecessors in interest) when the State ceased using K-273 as a state highway in 2002.

The basis for this assertion requires a bit more development. As we have mentioned, the 1970 and 1972 deeds from the Goodwills to the State were each titled as a "Deed for Highway Purposes." Each deed contained identical operative language, stating the deed transferred the respective tract of land to the State

> "(excepting the oil and gas minerals under or in said lands) . . . together with all and singular the tenements, hereditaments and appurtances thereto belonging or in any wise appertaining, forever. It is understood and agreed that [the State] is acquiring said real estate for state highway purposes.
>
> "And [the Goodwills] do hereby covenant, promise and agree to and with [the State] that at delivery of these presents they are lawfully seized of an estate in fee simple in all and singular the above granted and described premises with the appurtenances thereto, except for the right of way of any existing public highway thereon; that the same are free and clear of and from all and every incumbrance whatsoever, . . . and that they will forever warrant and defend the same unto [the State] or its assigns forever, against all and any lawful claim of all and any persons whomsoever."

Clark correctly points out that the plain language of these deeds indicated that they were transferring the land for highway purposes. He thus argues that the deeds created a limited transfer—a fee simple *determinable* interest in the land—that would automatically revert to the grantor when a specific condition ceases to occur. So, Clark contends, these tracts automatically reverted to the previous owner of his property in 2002 when Dane Avenue was no longer used for highway purposes as K-273.

We disagree. Kansas courts have consistently interpreted similar language in deeds as transferring land in fee simple without any reversion. More than 40 years ago, the Kansas Supreme Court observed that it is "well settled that the mere expression that property is to be used for a particular purpose will not in and of itself suffice to turn a fee simple into a determinable fee." *Roberts v. Rhodes*, 231 Kan. 74, 77, 643 P.2d 116 (1982).

The court's decision in *Roberts* illustrates this principle. There, previous property owners had transferred land to a school district in 1902 and 1908. Both deeds essentially stated that the property was being transferred "'only for school or cemetery purposes.'" 231 Kan. at 75. The land was then used for school purposes for more than 60 years, until the school district sold the land in 1971. The successor to the original property owners, Roberts, challenged the person who had received title from the school district, Rhodes, claiming the land should revert to Roberts when it ceased being used for school purposes.

On appeal, the Kansas Supreme Court acknowledged the difficulty of interpreting these deeds when the parties did not "provide for what should happen to the land after it has been used for school purposes for sixty years and then is no longer needed for such purpose." 231 Kan. at 76. But our Supreme Court found that despite the language in the 1902 and 1908 deeds regarding the intended use of the property, "neither deed made provision for the estate to revert or terminate" if the land ceased being used for that purpose. 231 Kan. at 76. Without any explicit language indicating a reversion, the court

7

held that the 1902 and 1908 deeds had transferred title in fee simple, not fee simple determinable. 231 Kan. at 80.

As this discussion highlights, it has long been the law in this state that a deed must clearly and explicitly reserve a reversionary interest in the grantor to create a fee simple determinable interest. *Kinney v. State*, 238 Kan. 375, 380, 710 P.2d 1290 (1985). The 1970 and 1972 deeds at issue in this case did not do that. Instead, they transferred the land to the State in fee simple without restriction, reserving for the Goodwills only the oil, gas, and mineral interests. Thus, the district court correctly found that, despite the language signifying the Goodwills' present intent, the 1970 and 1972 deeds transferred unlimited, fee simple ownership of the two tracts of land to the State.

Clark next asserts that, even if the Goodwills' transfer to the State was not limited to using the land as a state highway, the district court erred when it found at summary judgment that the City now owns that property. Clark argues that there is a factual question as to whether the City ever received title to the 1970 tract, as it was not explicitly described in the quitclaim deed the State provided to the City when it transferred the property in 2002.

Quitclaim deeds often are less than precise, and the 2002 quitclaim deed from the State to the City here is no different. The 2002 quitclaim deed does indicate that the State is transferring all property previously surrounding K-273 in Franklin County to the City. This would appear to include the 1970 tract, which everyone acknowledges abutted the highway. But the parties agree that the 2002 quitclaim deed does not include a legal description of the 1970 tract in its list of land being transferred.

The problem with Clark's arguments, however, is more fundamental. As we have indicated, the district court correctly found that the Goodwills transferred the 1970 and the 1972 tracts of land to the State in fee simple, reserving only the oil, gas, and mineral

8

rights to the Goodwills and their successors. We thus affirm the district court's ruling that Clark does not own that property.

There may have been a factual question as to whether the State or the City now owns the 1970 tract. But if such a question existed, that dispute would have been between the State and the City. We note that the State has not contested the district court's ruling that the City owns that land. Clark himself, as successor to the Goodwills, may be curious as to who owns that property. But he has no legal, cognizable interest in that determination. Thus, he has no standing to further contest the property's ownership. Accord *Wood v. Nicolson*, 43 Kan. 461, Syl. ¶ 3, 23 P. 587 (1890) (one must have some legal ownership interest in property before one can pursue a quiet-title action).

We affirm the district court's ruling that the City, and not Clark, owns the 1970 and 1972 tracts of land in fee simple, though Clark maintains an interest in the oil, gas, and mineral rights in that land. In light of this conclusion—that the City owns the land next to Dane Avenue—we need not determine whether the City also possesses a 20-foot or 30-foot right-of-way on that land. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (upholding the district court for a different reason than that originally provided).

Affirmed.