[Cite as *Cleveland Botanical Garden v. Drewien*, 2020-Ohio-1278.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CLEVELAND BOTANICAL GARDEN,:

Plaintiff-Appellee,:

No. 108536

v. :

STACI K. WORTHINGTON DREWIEN,
ET AL., :

Defendants-Appellants.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART
AND REMANDED
**RELEASED AND JOURNALIZED:** April 2, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-13-812284, CV-14-827728, and CV-18-905027

---

### *Appearances:*

Hahn, Loeser & Parks, L.L.P., Stephen J. Knerly, Jr., Eric B. Levasseur, Dennis R. Rose, and Sarah K. Lewis, *for appellee* Cleveland Botanical Garden*.*

Squire Patton Boggs, L.L.P., Steven A. Friedman, and Sean L. McGrane, *for appellee* University Circle, Inc.

Barbara A. Langhenry, Director of Law, L. Stewart Hastings, Jr., Assistant Director of Law, *for appellee* City of Cleveland.

Strauss Troy Co., L.P.A., Matthew W. Fellerhoff, William K. Flynn, Amy L. Hunt, and Stephen E. Schilling, *for appellants* heirs or beneficiaries of Wade Trust*.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Defendants-appellants, the trustee, heirs, and beneficiaries of the Jeptha H. Wade Trust (collectively referred to as "the heirs"), appeal from the trial court's declaratory judgment in favor of plaintiff-appellee, Cleveland Botanical Garden ("Botanical Garden"), determining that: (1) Botanical Garden's imposition of admission and parking fees, and limited hours of operation do not violate the "Public Park for the benefit of all people" ("park use") and "open at all times to the public" ("open") restrictions in the 1882 deed of Wade Park to Cleveland; (2) the deed's "fence restriction" is enforceable only by adjacent landowners; and (3) the heirs' reversionary interest was extinguished by operation of the Marketable Title Act, R.C. 5301.47, et seq. The heirs assign the following errors for our review:

> I. The trial court erred by granting summary judgment to [Botanical Garden] by holding the Marketable Title Act, R.C. 5301.47, et seq., extinguished [the heirs'] reversionary interest created in the root of title conveying Wade Park to the City of Cleveland in trust [under the Wade deed].

> II. The trial court erred by granting summary judgment to [Botanical Garden] by holding [that Botanical Garden's] admission and parking fees do not violate the conditions of the [Wade deed].

> III. The trial court erred by granting summary judgment to [Botanical Garden] because it is undisputed that Wade Park is not "open at all times to the public."

> IV. The trial court erred by granting summary judgment to [Botanical Garden] by holding: the [Wade deed] created a fee simple subject to a condition subsequent; but then holding the open wrought-iron fence condition is a restrictive covenant enforceable only by adjacent landowners.

V. The trial court erred by conducting an in camera review without giving [the heirs] the benefit of a privilege log.

{¶ 2} For the sake of clarity, we will address the assigned errors out of this predesignated order. Having reviewed the record and the controlling case law, we reverse the court's determination that the heirs' reversionary interest was extinguished by operation of the Marketable Title Act, we affirm the trial court's decision that Botanical Garden is not in violation of the "park use" and "open" restrictions in the deed, and we reverse the determination that the deed's "fence restriction" is enforceable only by adjacent landowners.

{¶ 3} In 1882, Jeptha H. Wade granted 73 acres of property, known as Wade Park, to the city of Cleveland for a park "to be kept open" to the public. In relevant part, the 1882 Wade deed provides:

> Know all men by these presents that I, Jeptha H. Wade of the City of Cleveland, County of Cuyahoga and State I, Jeptha H. Wade of the City of Cleveland, * * * being desirous of securing to the citizens of Cleveland for all time the opportunity of re-creating, having, improving and maintaining a beautiful and attractive Public Park therein for the benefit of all the people and being the owner of lands suitable for this purpose situated near the place where several important institutions of learning are about to be permanently located and on which grounds larger expenditures with a view to such a Park have already been made, do hereby freely give, grant and convey unto the said City of Cleveland and the successors, to have and to hold forever, [a 73-acre parcel].
>
> This conveyance is made to the said City of Cleveland forever in trust for the following purposes and upon the express conditions following to wit: * * * The said grounds at all times thereafter to be kept and maintained by said City in such repair and condition as to make it an attractive and desirable place of resort — as a Public Park to be open at all times to the public. The abutting land owners, their heirs and assigns, to have free ingress and egress through the same, subject forever to all rules and regulations prescribed by the Park Commissioners. To be for no other purpose than a public park and to

be called and known forever by the name of Wade Park; If fencing shall ever be placed on said Park grounds except along the westerly and southerly boundary, it shall be open wrought- iron fence.

I also reserve the right for myself and my heirs forever to place and maintain a Street Railroad in and along the Avenues forming the easterly and northerly boundaries of said Park. Said Railroad to be subject to laws and ordinances of the City, and stipulate that the abutting property owners, their heirs and assigns forever, may connect with any water pipe the City may place in said Park at the most proper and convenient places, subject however to water rules and regulations prescribed by the City, and may make all necessary drives and walks to connect with said easterly and northerly Avenue, and if the grounds aforesaid or any part thereof shall be perverted or diverted from the public purposes and uses herein expressed, the said property and every part thereof to revert to me or my heirs forever.

{¶ 4} After its founding in the 1930s, Botanical Garden was granted permission to occupy a converted boathouse on the Wade Park Lagoon. At this time, Botanical Garden assured the heirs that it would "not interfere with the adequate and reasonable use of said Wade Park" by the public.

{¶ 5} In 1964, Cleveland entered into a lease with Botanical Garden that incorporated all "conditions, restrictions or limitations and covenants" in the Wade deed. The lease provided that Botanical Garden would not "close" off or "barricade" the park, or any part of the park, and would not charge admission "for entrance" to the Botanical Garden apart from special event fees. In 1966, Botanical Garden moved to its present location.

{¶ 6} In 1971, Cleveland entered into a lease with appellee University Circle Incorporated ("UCI"). UCI assumed maintenance obligations for the Wade Oval portion of the park. This lease expressly incorporated the terms of the 1882 Wade deed, and provides that UCI shall only use the property in a manner that is

"consistent with any conditions, restrictions or limitations and covenants contained in [that] deed." By 2001, Botanical Garden subleased additional parcels from UCI in accordance with the terms of the 1971 lease. The 2001 sublease permitted Botanical Garden to install an underground parking garage. Botanical Garden currently occupies ten acres of Wade Park.

{¶ 7} By 2003, Botanical Garden undertook an expansion that quadrupled its building space and included a glass conservatory. The cost of the expansion was $70 million. Approximately $50 million of this sum was paid by contributions, and Botanical Garden planned to pay the remaining balance with bonds that would be paid from admission fees to a ten-acre section of the property. Fencing for the area includes a "wall" along portions of East Boulevard, chain-link fencing along portions of East Boulevard, and areas of wooden fencing. On a select few days of the year, admission is free.

{¶ 8} In 2010, Botanical Garden refinanced its bond debt, borrowing $11.5 million from Huntington Bank and giving Huntington Bank a "Leasehold Mortgage" on its interest in Wade Park. Huntington Bank later sold the loan, and the lease was in turn assigned to The Holden Arboretum.

{¶ 9} By 2019, Botanical Garden collected approximately $13 million from parking and admission fees. The heirs subsequently asserted a "reversionary interest," complaining that the "park use," "open," and fencing restrictions in the deed were violated.

{¶ 10} Botanical Garden filed this declaratory judgment action, seeking judicial determinations that: (1) its use, operation, and maintenance of the property is consistent with the deed restrictions; (2) it may, consistent with the 1882 deed, charge admission fees to a portion of its facilities and exhibits; (3) it may charge parking fees; (4) it may erect and maintain fencing. In opposition, the heirs asked the court to enjoin Botanical Garden from charging admission into the gardens and the parking facility, and order Botanical Garden to remove all but the limited wrought-iron fencing authorized in the 1882 deed.[1]

{¶ 11} The parties filed opposing motions for partial summary judgment. Botanical Garden maintained that the 1882 deed gave the heirs a right of entry, and that the heirs failed to preserve it in accordance with the Marketable Title Act. Botanical Garden also argued that the operation of a botanical garden, the charging of fees, regulating hours of operation, operation of a parking facility, and installation of fencing do not violate the terms of the deed or trigger a reversion to the heirs. In opposition, the heirs maintained that they possess a possibility of reverter that was not extinguished by the Marketable Title Act because it was both created in the "root of title" and incorporated in the 1964 and 1971 leases. The heirs further argued that Botanical Garden violated the "park use," "open," and "fencing restrictions" provisions of the 1882 deed by imposing admission and parking fees, installing

---

[1] The heirs also filed taxpayer actions against Cleveland in order to enforce the terms of the 1882 deed and the relevant leases. *See Cleveland, ex rel. William G. Wade v. Cleveland*, Cuyahoga C.P. Nos. CV-14-827728 and CV-18-905027. The taxpayer actions were stayed pending decision on the declaratory judgment action.

prohibited fencing, closing the area all but "24.5 [percent] of the year," and charging admission all but several days per year.

{¶ 12} The trial court ruled that the deed created a "fee simple subject to a condition subsequent / right of entry," and not a possibility of reverter, and that the heirs failed to preserve this interest in accordance with the Marketable Title Act. The court also concluded that Botanical Garden's "use and operation of the [Botanical Garden] Property as a botanical garden is a permissible public park use," so there was no violation of the terms of the Wade deed. The court held that the charging of admission or fees does not violate the "park use" or "open" restrictions in the 1882 deed, because "the term 'open, at all times to the public' does not mean 'free.'" Similarly, the court held that "having specific hours of operation does not mean that the property is 'closed off' to the public." The court also ruled that the construction and operation of parking facilities is consistent with the "park use" restriction in the 1882 deed.

{¶ 13} As to the fencing issue, Botanical Garden asserted that the provision regarding fencing is a restrictive covenant, enforceable only by the adjacent landowners. In opposition, the heirs argued that the deed language created a fee simple subject to a condition subsequent. The court held that the deed created a restrictive covenant, enforceable only by adjacent property owners.

**Claimed Violations of the 1882 Deed**

    **A. "Park Use" and "Open" Provisions**

{¶ 14} In the second and third assigned errors, the heirs argue that the trial court erred in determining that Botanical Garden is not in violation of the "park use" and "open" terms of the Wade deed because the facility has limited hours and charges admission and parking fees.

{¶ 15} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). To prevail on a motion for summary judgment, the movant must first be able to point to evidentiary materials that demonstrate there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the movant overcomes that initial burden, the nonmoving party may not merely resting upon the allegations contained in the pleadings to establish a genuine issue of material fact. Civ.R. 56(E). Instead, it has the reciprocal burden of responding and setting forth specific facts that demonstrate the existence of a "genuine triable issue." *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 663 N.E.2d 639 (1996).

{¶ 16} The construction of instruments of conveyance is a matter of law that is subject to de novo review. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996); *Bath Twp. v. Raymond C. Firestone Co.*, 140 Ohio App.3d 252, 256, 747 N.E.2d 262 (9th Dist.2000). In Ohio, the first rule of deed construction is that when the parties' intention is clear from the four corners of the

deed, courts will give effect to that intention. *Koprivec v. Rails-to-Trails of Wayne Cty.*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444, ¶ 29.

{¶ 17} Turning to the issue of whether Botanical Garden's operation of facilities, buildings, and gardens is consistent with the "park use" restriction, we note that the Wade deed provides "the opportunity of re-creating, having, improving, and maintaining a beautiful and attractive Public Park for the benefit of all the people." It further states that the "grounds [are] to be kept and maintained by the City in such repair and condition to make it an attractive and desirable place of resort." The operation of botanical gardens has repeatedly been found within the use of land for park purposes. *See Kinney v. Kansas Fish & Game Commn.*, 238 Kan. 375, 381, 710 P.2d 1290 (1985); *Behrens v. Spearfish*, 84 S.D. 615, 620, 175 N.W.2d 52 (1970); *Bernstein v. Pittsburgh*, 366 Pa. 200, 206-208, 77 A.2d 452 (1951); *Spires v. Los Angeles*, 150 Cal. 64, 66, 87 Pac. 1026 (1906); *Slavich v. Hamilton*, 201 Cal. 299, 257 Pac. 60 (1927).

{¶ 18} With regard to the charging of fees, the trial court held that the term "open, at all times to the public" does not mean "free." The court explained:

> [Botanical Garden's] charging of [an] admission fee and having specific hours of operation does not mean that the property is "closed off" to the general public. Rather, [Botanical Garden] charges fees in order to provide an educational, cultural, and recreational botanical experience to the public. [Botanical Garden's] charging fees for use of its facilities is consistent with the Wade deed provision of "re-creating, having, improving and maintaining a beautiful and attractive Public Park for the benefit of the people."

**{¶ 19}** This conclusion is supported by *Bernstein. Id.* at 209-210. *Accord Mansour v. Monroe*, 767 N.Y.S.2d 341, 1 A.D.3d 976 (4th Dept.2003). Moreover, "open to public use" does not require the area to be open to "everybody all the time." *Gally v. Delponte*, Tolland Jud. Dist. No. 44598, 1991 Conn. Super. LEXIS 3170 (Dec. 9, 1991). Right of access is not absolute and hours may be limited. *Accord Wyatt v. Hargadine*, C.D. Ill. No. 13-3150, 2013 U.S. Dist. LEXIS 149819 (Oct. 18, 2013).

**{¶ 20}** The provision of parking is also included within permitted park uses. *See Behrens* at 621; *Bernstein* at 204. Further, in *Save Our Heritage Organisation v. San Diego*, 237 Cal. App.4th 163, 187 Cal. Rptr.3d 754 (2015), the court upheld the construction of a for-pay parking facility in an urban park complex where the land was dedicated to use as a free public park.

**{¶ 21}** In light of our discussion of fencing in the discussion below, we do not reach the issue of the hours of operation of Botanical Garden.

**{¶ 22}** In accordance with all of the foregoing, the trial court properly concluded that the challenged terms of the 1882 deed were not violated. The second and third assigned errors are without merit and are overruled.

## B. Fencing Provision

**{¶ 23}** In the second portion of the fourth assigned error, the heirs argue that the trial court erred in concluding that the fence condition is a restrictive covenant that is enforceable only by adjacent landowners.

{¶ 24} Considering the nature of the fence provision set forth in the deed, we begin by noting that "'"A common idiom describes property as a 'bundle of sticks'— a collection of individual rights which, in certain combinations, constitute property."'" *State ex rel. New Wen, Inc. v. Marchbanks*, Slip Opinion No. 2020-Ohio-63, ¶ 24, quoting *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 2015-Ohio-381, 28 N.E.3d 562, ¶ 51 (10th Dist.), quoting *United States v. Craft*, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). State law determines which sticks are in a person's bundle. *Id.*, citing *Craft,* 535 U.S. at 278. We therefore consider the nature of this provision in light of whether the parties' intention is clear from the four corners of the deed. *Koprivec*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444, ¶ 29. If the deed restriction is "indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." *Corna v. Szabo*, 6th Dist. Ottawa No. OT-05-025, 2006-Ohio-2764, ¶ 39.

{¶ 25} Additionally, conditions subsequent are not favored in law and are looked upon with disfavor in equity; conditions subsequent must be clearly expressed and strictly construed. *Second Church of Christ, Scientist v. Le Prevost*, 67 Ohio App. 101, 104, 35 N.E.2d 1015 (9th Dist. 1941). Key facts include whether there are words in the provision creating a reverter. *Id.*; *Wayne Lakes Park, Inc. v. Warner*, 104 Ohio App. 167, 147 N.E.2d 269 (2d Dist.1957). The Ohio Supreme Court held that the descriptive phrase, "so long as" or the words "during" or "until"

when used in the deed could be sufficient to create a fee simple estate subject to a reversion. *Koprivec* at ¶ 31-32. Conversely,

> "A restrictive covenant is a 'private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.'" * * * *City of Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28 (2002), citing Black's Law Dictionary 371 (7th Ed.Rev.1999). In the context of property law, a "covenant" denotes a contract that is either personal or "runs with the land." *Maasen v. Zopff*, 12th Dist. Warren Nos. CA98-10-135, 1999 Ohio App. LEXIS 3422, 1999 WL 552747, 3 (July 26, 1999).

*State Cty. Park Dist. v. Dickerhoof,* 2018-Ohio-4319, 122 N.E.3d 608, ¶ 62 (5th Dist.).

{¶ 26} In *Dickerhoof,* the court considered the following provision: "Provided always and these presents are upon this express condition, that the said party of the second part shall construct its railroad on said premises." The court concluded that this created a restrictive covenant and not a reversion, explaining as follows:

> Instead of a reversion, this language establishes a restriction or covenant regarding the use of the land. * * *
>
> The deed contains language expressing the expectation that the grantee will use the property "to conveniently operate said railroad, and for no other use or purpose" but it contains no language qualifying the transfer of the property as being effective only for "so long as" the property is used to operate the railroad and we cannot add such language. The intention of the parties is clear and "the first rule of deed construction in Ohio is that when the parties' intention is clear from the four corners of the deed, we will give effect to that intention." *Koprivec*, supra at ¶ 29.

*Id.* at ¶ 62-63. *Accord Giancarli v. Arroyo,* 9th Dist. Summit No. 18223, 1997 LEXIS 4751 (Oct. 29, 1997).

**{¶ 27}** Similarly, in this matter, the following language is included as an "express condition":

> The abutting land owners, their heirs and assigns, to have free ingress and egress through the same, subject forever to all rules and regulations prescribed by the Park Commissioners. To be for no other purpose than a public park and to be called and known forever by the name of Wade Park; If fencing shall ever be placed on said Park grounds except along the westerly and southerly boundary, it shall be open wrought- iron fence.

**{¶ 28}** The reversionary language of the deed provides:

> [I]f the said City shall fail to comply with the aforesaid stipulations for the expenditure of seventy-five thousand dollars if the grounds aforesaid or any part thereof shall be perverted or diverted from the public purposes and uses herein expressed, the said property and every part thereof to revert to me or my heirs forever.

**{¶ 29}** We therefore hold, viewing the fence provision or "stick within the bundle" conveyed in the deed, that it sets forth a restrictive covenant that runs with the land in the event that improper fencing is installed. The deed contains language expressing the expectation that the grantee will limit fencing as specified in the deed, but this portion of the deed does not contain reversionary language.

**{¶ 30}** As to Botanical Garden's contention that the restrictive covenant is only enforceable by abutting landowners, we note that in *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56, 166 N.E. 887 (1929), the Supreme Court held that:

> "Every owner of real property has the right so to deal with it, as to restrain its use by his grantees within such limits as to prevent its appropriation to purposes which will impair the value or diminish the pleasure of the enjoyment of the land which he retains. The only

restriction on this right is, that it shall be exercised reasonably, with a due regard to public policy, and without creating any unlawful restraint of trade. Nor can there be any doubt that in whatever form such a restraint is placed on real estate by the terms of a grant, whether it is in the technical form of a condition or covenant, or of a reservation or exception in the deed, or by words which give to the acceptance of the deed by the grantee the force and effect of a parol agreement, *it is binding as between the grantor and the immediate grantee, and can be enforced against him by suitable process, both in law and equity.*"

(Emphasis added.) *Id.* at 69-70, quoting *Whitney v. Union Railway Co.,* 11 Gray 359 (1860). *Accord Morgan Woods Homeowners' Assn. v. Wills,* 5th Dist. Licking No. 11 CA 57, 2012-Ohio-233, ¶ 61-62 (homeowners' association may enforce restrictive covenant in deed).

{¶ 31} Therefore, we conclude that the restrictive covenant is binding by the heirs of the grantor and Botanical Garden and therefore enforceable by the heirs. In this connection, the trial court erred insofar as it held that the restrictive covenant is enforceable only by the adjacent landowners.

{¶ 32} The second portion of the fourth assigned error is well-taken in part and is sustained.

**Marketable Title Act**

{¶ 33} In the first assigned error, the heirs argue that the trial court erred in concluding that their asserted reversionary interests expired by operation of the Marketable Title Act for failure of notice in accordance with R.C. 5301.51.

{¶ 34} In *Blackstone v. Moore,* 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, the Ohio Supreme Court explained the Marketable Title Act as follows:

the act provides that a person "who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest." R.C. 5301.48. The marketable record title "operates to extinguish such interests and claims, existing prior to the effective date of the root of title." R.C. 5301.47(A). (A "root of title" is "that conveyance or other title transaction in the chain of title of a person * * * which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E).) The act facilitates title transactions, as the record marketable title "shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." R.C. 5301.50.

Balanced against the desire to facilitate title transactions is the need to protect interests that predate the root of title. To this end, the act provides that the marketable record title is subject to interests inherent in the record chain of title, "provided that a general reference * * * to * * * interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such * * * interest." R.C. 5301.49(A).

*Id.* at ¶ 7-8.

{¶ 35} Effective as of 1961, the purpose of the Marketable Title Act is to "simplify and facilitat[e] land title transactions by allowing persons to rely on a record chain of title as described in Section 5301.48 of the Revised Code, subject only to such limitations as appear in, section 5301.49 of the Revised Code." R.C. 5301.55.

{¶ 36} The applicable definitions of terms used in the Marketable Title Act are set forth in R.C. 5301.47 as follows:

(A) "Marketable record title" means a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code.

(B) "Records" includes probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situate.

(C) "Recording," when applied to the official public records of the probate or other court, includes filing.

(D) "Person dealing with land" includes a purchaser of any estate or interest therein, a mortgagee, a levying or attaching creditor, a land contract vendee, or any other person seeking to acquire an estate or interest therein, or impose a lien thereon.

(E) "Root of title" means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when market-ability is being determined. The effective date of the "root of title" is the date on which it is recorded.

(F) "Title transaction" means any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrators, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage.

{¶ 37} R.C. 5301.49 governs record marketable title and provides:

Such record marketable title shall be subject to:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code;

(B) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 5301.51 of the Revised Code;

(C) The rights of any person arising from a period of adverse possession or user, which was in whole or in part subsequent to the effective date of the root of title;

(D) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code * * *.

{¶ 38} The relevant prior interests are set forth in R.C. 5301.50 as follows:

Subject to the matters stated in section 5301.49 of the Revised Code, such record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title. All such interests, claims, or charges, however denominated, whether legal or equitable, present or future, whether such interests, claims, or charges are asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void.

{¶ 39} The preservation of interests is governed by R.C. 5301.51 which states:

(A) Any person claiming an interest in land may preserve and keep effective such interest by filing for record during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim. * * *

(B) If the same record owner of any possessory interest in land has been in possession of such land continuously for a period of forty years or more, during which period no title transaction with respect to such interest appears of record in his chain of title, and no notice has been filed by him on his behalf as provided in division (A) of this section, and

such possession continues to the time when marketability is being determined, such period of possession is equivalent to the filing of the notice immediately preceding the termination of the forty-year period described in division (A) of this section.

{¶ 40} We begin by noting that the trial court held that "[i]t is undisputed by the parties that the root of title is the Wade Deed, recorded in 1882." Therefore, it is clear that the heirs' interests were created "in the root of title" and not "prior to the effective date of the root title." Therefore, their interests are not extinguished by operation of R.C. 5301.50. *Accord Blackstone*, 2018-Ohio-4959 at ¶ 7; *Toth v. Berks Title Ins. Co.*, 6 Ohio St.3d 338, 340, 453 N.E.2d 639 (1983).

{¶ 41} Botanical Garden maintains, however, that in *Carlson v. Koch*, 8th Dist. Cuyahoga Nos. 36497 and 36498, 1978 Ohio App. LEXIS 9501 (Jan. 19, 1978), this court required the reversionary heirs to comply with the requirements of R.C. 5301.49(A) and 5301.51 even though their reversionary interest was created "in the root of title." However, in *Carlson*, the reversionary interest was in fact created prior to the root of title, because the court concluded that the heirs' claimed reversionary interests were created in deeds from 1896 and 1898, whereas "the root of title was established at the 1906 annexation of the real estate parcels in question." The court therefore held that:

> Appellants' reversionary interest existed prior to the root of title and specific mention of such interest in the root of title within forty years of the date upon which marketability was to be discovered would have served to preserve such interest.

*Id.*

{¶ 42} Botanical Garden also notes that in *Verona United Methodist Church v. Shock,* 2d Dist. Preble No. CA 252, 1978 Ohio App. LEXIS 10863 (Oct. 13, 1978), the Second District Court of Appeals held that reversionary heirs were required to comply with the requirements of R.C. 5301.49(A) and 5301.51 even though their reversionary interest was created "in the root of title." However, an unpublished opinion issued before May 1, 2002, by another judicial district is not controlling case law. *See* Rep.Op.R. 4; *Watson v. Neff,* 4th Dist. Jackson No. 08CA12, 2009-Ohio-2062, ¶ 16. We decline to follow it herein. Moreover, it is inapposite to this matter in that it, unlike the instant matter, does not concern land owned by a municipal corporation as owner or trustee of property for park purposes, pursuant to R.C. 755.19 and did not involve any claimed continuous possession, recorded leases, or other relevant "title transactions."

{¶ 43} Turning next to the heirs' argument that the Marketable Title Act does not extinguish their interests herein because, as a matter of law and pursuant to R.C. 755.19, the Wade deed requires Cleveland to hold the property "in trust for the benefit of all people" to be maintained as a public park and "for no other purpose than a public park."

{¶ 44} We note, as a matter of law, that under R.C. 755.19,

> In any municipal corporation which is the owner or trustee of property for park purposes, or of funds to be used in connection therewith, by deed of gift, devise, or bequest, such property or funds shall be managed and administered in accordance with the provisions or conditions of such deed of gift, devise or bequest.

{¶ 45} We agree that in light of the statutory mandate that Cleveland manage and administer the property in accordance with the terms of the Wade deed, Cleveland is compelled to "hold the property in trust for the benefit of all people," so Wade Park cannot be subject to conventional "land title transactions" that are the general subject of the Marketable Title Act as stated in R.C. 5301.55.

{¶ 46} The heirs additionally argue that Cleveland's continuous possession of the property in trust for the benefit of all people satisfies the notice provision by operation of R.C. 5301.49(B) ("All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 5301.51 of the Revised Code."). Botanical Garden insists that this provision is inapplicable because the Wade heirs have not personally been in continuous possession of the property. However, Cleveland's continuous possession of the property "in trust for the benefit of all people" satisfies the notice provision by operation of R.C. 5301.51(B), which states:

> If the same record owner of any possessory interest in land has been in possession of the land continuously for a period of forty years or more, during which period no title transaction with respect to such interest appears of record in his chain of title, and no notice has been filed by him on his behalf as provided in division (A) of this section, and such possession continues to the time when marketability is being determined, the period of possession is equivalent to the filing of the notice immediately preceding the termination of the forty-year period described in division (A) of this section.

{¶ 47} That is, Cleveland is the "same record owner" in continuous possession of the property in trust for the benefit of all people, and this satisfies the notice provision by operation of R.C. 5301.51(B). Likewise, the leases executed in

this matter incorporated the terms of the Wade deed and these "title transactions" were recorded in the chain of title. R.C. 5301.51(B).

{¶ 48} In accordance with the foregoing, the trial court erred insofar as it held that the interests claimed herein expired by operation of the Marketable Title Act.

{¶ 49} The first assigned error is well-taken and sustained.

**In Camera Review Lacking Privilege Log**

{¶ 50} The fifth assigned error stems from the trial court's denial of the heirs' motion to compel discovery of communications between Botanical Garden, UCI, and their counsel. The heirs assert that the court erroneously conducted an in camera review, and improperly failed to require Botanical Garden and UCI to prepare a privilege log before ruling that the communications were not discoverable. In opposition, Botanical Garden maintains that the heirs agreed to the in camera review during a pretrial conference, and that no privilege log was needed because Botanical Garden and UCI apprised the heirs that they were asserting the common-interest and work-product privileges.

{¶ 51} This court employs the de novo standard of review in order to determine whether information sought is confidential and privileged from disclosure. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13.

{¶ 52} The common-interest privilege is applicable "'where two or more clients, each represented by their own lawyers, meet to discuss matters of common

interest — commonly called a joint defense agreement or pooled information situation.'" *State ex rel. Bardwell v. Cordray*, 181 Ohio App.3d 661, 2009-Ohio-1265, 910 N.E.2d 504 (10th Dist.), quoting McCormick, *Evidence*, Section 91.1, at 413-414 (6th Ed.2006). This privilege "provides a qualified privilege protecting the attorney's mental processes in preparation of litigation, establishing 'a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary.'" *Squire Sanders & Dempsey v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 54, quoting *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir.2006).

{¶ 53} The purpose of the work-product rule is to protect "the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases" and "to prevent an attorney from taking undue advantage of his adversary's industry or efforts." *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 16, citing Civ.R. 26(A). "To that end, Civ.R. 26(B)(3) places a burden on the party seeking discovery to demonstrate good cause for the sought-after materials." *Id.*

{¶ 54} In response to a discovery dispute, a trial court may conduct an in camera review as an accepted procedure for evaluating disputed records. *See generally State ex rel. Essi v. Lakewood*, 8th Dist. Cuyahoga No. 104659, 2018-Ohio-5027 (conducting in camera inspection of documents for consideration of various privilege claims including common interest privilege and work product).

{¶ 55} Here, the court conducted a telephonic conference and then the parties briefed the issue. Botanical Garden maintained that the communications were protected by the work-product and common-interest privileges. The court concluded:

> Upon review of the documents produced under seal by UCI for in camera inspection, the court finds that the common interest exception applies and that the documents produced are attorney work product, including emails regarding litigation strategy. The court finds that UCI and [Botanical Garden] have a common interest in the claims of this declaratory judgment action, specifically, regarding whether [Botanical Garden's] current use of the property is consistent with the 1882 deed. As the documents are attorney work product and are covered by the common interest doctrine, [Botanical Garden] and UCI are not required to produce a privilege log.

{¶ 56} We fully concur with this analysis. It is supported in the record, and, significantly, this contention is supported by a signed Common Interest Agreement dated August 17, 2015. It is also consistent with UCI and Botanical Garden's stated common interest as appellees' sharing a single brief herein.

{¶ 57} Further, because the basis of the parties' privilege claims was made clear to the heirs, no prejudicial error occurred due to the absence of a privilege log. *Accord Csonka-Cherney v. ArcelorMittal Cleveland, Inc.*, 2014-Ohio-836, 9 N.E.3d 515, ¶ 23-24 (8th Dist.) (employee's challenge to the production of the medical records was not waived despite not having filed a privilege log under Civ.R. 26(B)(6)(a) because she consistently and unequivocally gave the employers notice that she was not waiving her right to assert privilege).

{¶ 58} The fifth assigned error lacks merit and is overruled.

**{¶ 59}** In accordance with the foregoing, the judgment of the trial court is affirmed insofar as it determined that the "park use" and "open" restrictions in the 1882 deed of Wade Park to Cleveland have not been violated; it is reversed insofar as it determined that the fencing restrictions have not been violated; it is reversed insofar as it determined that the fencing restrictions are enforceable only by adjacent landowners; and it is reversed insofar as it determined that the heirs' claimed interests have been extinguished by operation of the Marketable Title Act

**{¶ 60}** The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR

KEY WORDS:

Deed restriction; parks; restrictive covenant; fences; Marketable Title Act; discovery; in camera; privilege log

Trial court properly concluded that Botanical Garden's use and operation of facility and underground parking structure did not violate park use restriction in 1882 deed; court properly found that charging admission for some displays and for parking does not violate the portion of the deed requiring parcel to be open at all times to the public; fence provision was a restrictive covenant but was enforceable by grantor's heirs; trial court erred in concluding that heirs' claimed interests were extinguished by the Marketable Title Act; trial court did not err in considering common interest and work product privilege claims in an in camera hearing.